**Loleta B. WING and Kentucky Fried Chicken of Meridian, Inc.**

v.

**J.C. BRADFORD & CO. and Gary Vaughan.**

**Civ. A. No. EC 84–100–D–D.**

United States District Court, N.D. Mississippi, E.D.

Sept. 16, 1987.

William J. Landers, Shepherd D. Tate, D. Andrew Byrne, Martin, Tate, Morrow & Marston, Memphis, Tenn., for plaintiffs.

Ames Davis, Nashville, Tenn., for J.C. Bradford.

Dewitt T. Hicks, Jr., Columbus, Miss., for Gary Vaughan.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is presently before the court on several motions: (1) plaintiffs' Motion for Order Confirming Arbitration Award, Assessing Attorneys' Fees and Interest and Entering Judgment; (2) Defendant J.C. Bradford & Company's Motion to Dismiss Plaintiff's Motion to Confirm; (3) Defendant J.C. Bradford & Company's Motion for Summary Judgment; and (4) Defendant Vaughan's Motion in Limine. After having reviewed the parties' briefs, affidavits, exhibits, and authorities, the court is now in the position to rule on each of the respective motions.

### I. *Factual and Procedural Background*

The actions complained of in this case originated in early 1983, when Mrs. Loleta B. Wing ("Wing"), the plaintiff in this action, was approached by the defendant Gary Vaughan, who was at that time a vice president of defendant J.C. Bradford & Company ("Bradford"). Vaughan's actions in handling Wing's subsequent account with Bradford were the subject of the original complaint in this matter filed on March 16, 1984. An amended complaint, alleging seven counts, was filed in this court on May 8, 1984. The seven counts alleged in the amended complaint read as follows:

1. Securities fraud in violation of the Securities Act of 1933;

2. Securities fraud in violation of the Securities Exchange Act of 1934;

3. Violation of the Racketeer Influenced and Corrupt Organizations Act;

4. Securities fraud in violation of the Mississippi Securities Act;

5. Common law fraud in violation of Mississippi law;

6. Breach of contract in violation of Mississippi law; and

7. Breach of fiduciary duties in violation of Mississippi law.

Plaintiff sought recovery against both defendants Bradford and Vaughan.

In May 1985, defendants moved to compel arbitration:

[o]f the arbitrable disputes between the parties pursuant to provisions of 9 U.S.C.A. Sections 3, 4 and 6 [the Federal Arbitration Act], on the grounds that under the provisions of written agreements executed by plaintiffs, plaintiff had agreed to arbitrate the disputes herein....

By order entered July 17, 1985, as clarified by an order dated August 12, 1985, this court directed that arbitration proceed as to all of plaintiffs' state law claims (Counts 4 through 7) against Bradford. The court ruled that neither the claims pending against Vaughan nor any of plaintiffs' Federal Securities Law and RICO claims were arbitrable and the court stayed all proceedings pending the outcome of arbitration ordered for the Mississippi state law claims. Neither defendant appealed this court's decision regarding the non-arbitrability of the federal securities and RICO claims.

Plaintiffs submitted a statement of claim for arbitration under the rules of the New York Stock Exchange ("NYSE") which alleged essentially the same facts set forth in the first amended complaint, and sought recovery for alleged violations of the Mississippi Securities Law, common law fraud, breach of contract, breach of fiduciary duties, and failure to supervise. Plaintiffs also sought attorneys' fees and punitive damages before the arbitrators. The parties jointly executed a uniform submission agreement which specified as follows:

The undersigned parties hereby submit the present matter in controversy as set

forth in the attached Statement of Claim [and] Answers ... to arbitration in accordance with the Constitution, By–Laws, Rules, Regulations and/Code of Arbitration Procedure of the sponsoring organization.

A panel of three arbitrators was appointed by the NYSE. The three arbitrators held hearings of this matter on February 12 and April 2, 3 and 4, 1986. Both parties were represented by counsel, were given full opportunity to present evidence, cross-examine, file briefs, and make final arguments.

On June 23, 1986, the three arbitrators unanimously entered their summary decision in favor of plaintiffs. The arbitrators rendered the following award: (a) plaintiff Kentucky Fried Chicken of Meridian, Inc. was awarded $32,145 in damages and $12,588 in expenses and attorneys' fees; (b) plaintiff Wing was awarded $113,732 in damages and held entitled to $44,631 in expenses and attorneys' fees; and, (c) costs in the arbitration in the amount of $3,150, payable to NYSE, were assessed against Bradford. The arbitrators' one-page decision was entered without elaboration, as is custom.

On July 23, 1986, plaintiffs moved this court for an Order Confirming Arbitration Award, Assessing Attorneys' Fees and Interest, and Entering Judgment. On September 22, 1986, Bradford filed in the United States District Court for the Western District of Tennessee, Western Division, a Motion to Vacate Arbitrator's Award of Attorneys' Fees and Expenses, seeking to set aside that portion of the arbitrators' award which pertained to attorneys' fees and expenses. On January 6, 1987, the United States District Court for the Western District of Tennessee, Western Division, transferred said motion to this court. Additionally, on April 1, 1987, as full payment and satisfaction of the arbitrators' award, except for the award of attorneys' fees, Bradford paid and plaintiffs accepted the full amount of such award, exclusive of the award of attorneys' fees, together with

applicable interest through April 1, 1987. At the same time, defendant Bradford moved this court for summary judgment dismissing plaintiffs' first amended complaint, specifically Counts 1 through 3. Also pending in this action is a motion in limine filed with this court on June 3, 1987 by defendant Gary Vaughan. The court addresses each of the pending motions separately, with the exception of the cross-motions related to the arbitration award.

II. *Plaintiff's Motion to Confirm Arbitrators' Award and Defendant Bradford's Motion to Dismiss*

■ The parties have mutually agreed to the substance of the arbitrators' award,[1] except for that portion relating to the arbitrators' award of attorneys' fees and expenses to plaintiffs Wing and Kentucky Fried Chicken of Meridian. Thus, the only remaining portion of the arbitrators' award which plaintiffs would have this court confirm is that portion wherein the arbitrators awarded attorneys' fees and expenses. Bradford argues that the court is without subject matter jurisdiction to consider plaintiffs' motion to affirm the arbitration award because exclusive jurisdiction to affirm, vacate or modify such an award is conferred upon the United States District Court in the district wherein the award is actually entered. In this case, defendants argue that the proper forum for an order affirming, vacating, or modifying the arbitration award is the United States District Court for the Western District of Tennessee, Western Division, because the arbitrators' award was rendered in Memphis, Tennessee.

Section 9 of the Federal Arbitration Act, 9 U.S.C. Section 9, provides in part:

If the parties in their agreement have agreed that a judgment of the court shall be entered on the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must

1. Following the pretrial conference in this cause on April 2, 1987, this court entered judgment on

the uncontested portion of the arbitrators' award.

grant such an order unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of this Title. If no court is specified in the agreement of the parties, then such application may be made to the United States Court in and for the district within which such award was made.

Neither party disputes that their arbitration agreement contained no specification with regard to this court or any other court having authority to confirm the arbitration award. The court notes, however, that defendant moved this court, which had jurisdiction of this cause, to stay the proceedings and compel arbitration. Defendant Bradford in no manner challenged this court's authority to compel the arbitration which was subsequently conducted. Having arbitrated its claims with the plaintiffs, Bradford now comes before this court stating that the court has no authority or jurisdiction to confirm the arbitration award which was compelled by this court. In essence, then, defendant Bradford would have the court dismiss this action and require plaintiffs to file a separate action or respond to the action filed by defendants in Tennessee in order to have their arbitration award confirmed. Obviously, the Tennessee District Court felt that this court was in a better position to rule on the arbitrators' award, since this court had jurisdiction over the parties and had heard previous motions in the matter.

Neither party cites the court to any binding Fifth Circuit precedent in this matter. An independent review by the court reveals no Fifth Circuit case directly on point. Accordingly, the court is required to look to other district and circuit court decisions for persuasive or analogous authority. In the case of *NII Metal Services, Inc. v. ICM Steel Corporation,* 514 F.Supp. 164 (N.D. Ill.1981), the court faced virtually the same factual and legal issues raised in this action. In that case, NII Metal Services, Inc. sought affirmation in the Illinois District Court of an arbitration decision rendered in New York City. ICM opposed the motion, arguing that Section 9 of the Federal Arbitration Act limited jurisdiction to the United States District Court for the Southern District of New York. The Illinois Court read the jurisdiction language of Section 9 of the Arbitration Act as permissive rather than inclusive, holding:

> It would of course appear wasteful for this court, already having jurisdiction of the parties, to be required to dismiss the action, making the prior stay of a meaningless act and compelling NII to sue in New York to affirm the award. Accordingly, the conclusion expressed in this opinion is consistent with the principles of judicial economy. This court hereby grants an order confirming the award in NII's favor made pursuant to the arbitration.

In the case of *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698 (2nd Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986), the Second Circuit expressly agreed with the Illinois District Court's ruling in *NII Metal Services.* The Second Circuit held: "[O]nce a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted." *Id.* at 706. The *Smiga* court agreed with the conclusion reached in the case of *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.,* 452 F.Supp. 573 (D.C.Neb.1978), which held that the venue provision of Section 9 should be read as permissive rather than exclusive.

In support of its argument that the court does not have jurisdiction to confirm the arbitration award, Bradford relies on the cases of *Island Creek Coal Sales Company v. City of Gainesville, Florida,* 729 F.2d 1046 (6th Cir.1984) and *City of Naples v. PrePakt Concrete Company,* 490 F.2d 182 (5th Cir.1974), *cert. denied,* 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974). The court notes that in neither of these cases was the court faced with the question of whether a federal district court which had ordered the proceedings in a lawsuit stayed and the claim arbitrated retained jurisdiction to affirm a binding award subsequently entered outside the district. In the *Island Creek Coal* case, the Court of Appeals for the Sixth Circuit was concerned

with the review of the arbitrators' interim order. *Id.* at 1050. No interim order is involved in the case under consideration here. Similarly, the factual and legal issues presented in *City of Naples* are clearly distinguishable from those before this court. In *City of Naples*, a Florida court compelled arbitration and the arbitration proceeding was held within the Northern District of Ohio. After an award was made in PrePakt's favor by the Ohio arbitration panel, Prepakt moved the United States District Court for the Northern District of Ohio to confirm the award. Naples attempted to obtain an injunction from the Northern District of Florida, which had retained jurisdiction over the parties' pending lawsuit. The Florida District Court issued an injunction which was later vacated by the Fifth Circuit. In vacating the injunction, the Fifth Circuit held:

> The city may be technically correct in urging that the federal court in Florida retain jurisdiction over the stayed lawsuit. Nevertheless, in view of Section 9's command, and for reasons of judicial restraint and comity, the district judge should have declined to enjoin the confirmation proceeding in the Ohio District Court.

*Id.* at 184. In the instant case, this court is not asked to enjoin the proceedings commenced by Bradford in the United States District Court for the Western District of Tennessee. Additionally, the court is mindful of the fact that the Tennessee District Court has transferred the motion to vacate filed by Defendant Bradford to this court for resolution, apparently considering this court in the better position to rule on the arbitration award which was ordered by this court. Accordingly, the court is of the opinion that it does have subject matter jurisdiction to entertain plaintiffs' motion to confirm the arbitration award. The court will now address the substance of plaintiffs' motion to confirm.

█ In deciding whether to confirm the arbitrators' award, this court has a very narrow scope of review. The merits of the arbitrators' decision are not open to *de novo* review by this court. *Minute Maid Company v. Citrus, Cannery, Food Processing and Allied Workers, Local Union No. 444,* 331 F.2d 280, 281 (5th Cir.1964). The parties have agreed that the only issue remaining to be resolved regarding the arbitrators' award is the award of attorneys' fees and expenses. Bradford argues in essence that the arbitrators exceeded their powers in awarding attorneys' fees and expenses to the plaintiffs. The arbitrators' authority, however, is limited only by the scope of the agreement between the parties. *French v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 784 F.2d 902, 908 (9th Cir.1986). The submissions made by Bradford and the plaintiffs to the arbitrators included cross-motions for attorneys' fees. Thus, it would appear that the arbitrators were acting within the scope of their authority in granting attorneys' fees to the plaintiffs. Bradford signed the Uniform Submission Agreement containing the plaintiffs' statement of claim which contained a prayer for attorneys' fees and expenses. In the opinion of the court, Bradford therefore agreed to allow the arbitrators to consider the plaintiffs' claim for attorneys' fees and expenses. Apparently, Bradford did not anticipate the arbitrators awarding any fees or expenses to plaintiffs. As one court said, Bradford is: "Now unhappy with the bed it has made for itself, [and] no longer wishes to lie in it." *Willoughby Roofing & Supply Co. v. Kajima International, Inc.,* 598 F.Supp. 353, 356 (N.D.Ala.1984), *aff'd,* 776 F.2d 269 (11th Cir.1985). The court is of the opinion that the award of attorneys' fees and expenses must, however, be confirmed because same was jointly submitted for consideration to the arbitrators. Inasmuch as the parties' Uniform Submission Agreement explicitly empowered the arbitrators to decide the issue of attorneys' fees and expenses, the court construes the arbitrators' award as having been within the scope of their authority. *See United Steel Workers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 585 (1960). The arbitrators' award must, therefore, be confirmed. The court is of the opinion that the plaintiffs' motion to confirm should be granted and Defendant

Bradford's motion to dismiss should be denied.

■ The court agrees with the plaintiffs' contention that this court should award plaintiffs' interest on the arbitrators' award from June 23, 1986, the date it was rendered.

Paragraph four of the parties' Uniform Submission Agreement specifically provides for interest on the award. The court also agrees that an appropriate rate of interest on the award of attorneys' fees and expenses would be the eight percent rate applicable to a Mississippi judgment. *See* Mississippi Code Ann. Section 75–17–7 (Cum.Supp.1985). *See also Western Line Consol. Sch. v. Continental Cas. Co.*, 632 F.Supp. 295 (N.D.Miss.1986). Moreover, the award on plaintiffs' state law claim will conclude that portion of plaintiffs' action against Bradford. Plaintiffs will still be permitted to proceed to trial on the remainder of their claims against Bradford and on all of their claims against Vaughan as discussed more fully below. There is, therefore, no just reason to delay entry of judgment on the remainder of the arbitrators' award until after trial of the remaining claims. Accordingly, the court will enter final judgment on the arbitration award pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. An appropriate order and judgment will accompany this opinion.

### III. *Bradford's Motion for Summary Judgment*

Bradford seeks summary judgment in its favor on Counts 1 through 3 (Federal Securities Law claims and RICO claims) of plaintiffs' amended complaint. The stated grounds for Bradford's motion for summary judgment are as follows: 1) plaintiffs can recover no damages under Counts 1 and 2 of the complaint which have not already been adjudicated in the arbitration award; 2) plaintiffs' claim in Count 3 under RICO was arbitrable and would be merged into the arbitration award; 3) Count 3 fails to state a cause of action for which relief can be granted under RICO and the undisputed facts establish that plaintiffs are not entitled to any recovery under RICO.

### A. *Res Judicata* or Collateral Estoppel as to Federal Securities Act Claims

■ Plaintiffs' Counts 1 and 2 assert claims under Section 12(2) of the Securities Act of 1933, 15 U.S.C. Section 77*l* (2), and Section 10(b) of the Securities Act of 1934, 15 U.S.C. Section 78j(b). These claims have previously been held to be nonarbitrable, *Mayaja, Inc. v. Bodkin*, 803 F.2d 157 (5th Cir.1986), *vacated by Shearson Lehman Brothers v. Mayaja*, 482 U.S. ——, 107 S.Ct. 3205, 96 L.Ed.2d 692 (1987); however, the Supreme Court's recent ruling in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) could be construed as holding that plaintiffs' Counts 1 and 2 are now arbitrable. Defendants argue that the causes of action asserted under the Securities Acts are virtually indistinguishable from plaintiffs' claims for common-law fraud and violation of the Mississippi Securities Law, and that the award of damages by the arbitrators would include, or be included in, any damages which would be recovered under these acts in a full trial on the merits.[2]

The requirements for applying collateral estoppel to a federal claim are: 1) identity between the issue at stake and the issue

2. In this connection, defendants argue that the arbitration award has *res judicata* effect as to plaintiffs' Federal Securities Act causes of actions. Defendants' reliance on *res judicata* is misplaced. Although the courts sometimes use the terms *res judicata* and collateral estoppel interchangeably, *res judicata* or claim preclusion applies only when a litigant attempts to litigate the same cause of action that has previously been decided in a judicial proceeding. *McDonald v. City of West Branch*, 466 U.S. 284, 287, 104 S.Ct. 1799, 1801, 80 L.Ed.2d 302 (1984). The court is of the opinion that *res judicata* cannot apply in the present case because plaintiffs' Federal Securities Act claims were not in fact presented to the panel of arbitrators. Collateral estoppel or issue preclusion applies where a litigant seeks to litigate issues which were presented in an earlier forum. *McDonald,* 466 U.S. at 287, 104 S.Ct. at 1801. Bradford is asserting here that plaintiffs' Federal Securities Act claims involve the same issues as did their state law claims which were resolved by the arbitrators. Thus, collateral estoppel and not *res judicata* is the applicable defense.

litigated in the earlier proceeding; 2) actual litigation of the critical issue; 3) necessity that the decision on the issue in the prior litigation be a necessary, essential part of the judgment in the earlier action. *Holmes v. Jones,* 738 F.2d 711, 713 (5th Cir.1984). Bradford argues that there would be no difference in recovery regardless of whether liability is founded on the Federal Securities Acts or on common law fraud and deceit. In support of its argument, Bradford cites *Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir.1981), *aff'd in part and rev'd in part,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). In essence, Bradford argues that the Mississippi Securities Law claims and common law claims which plaintiffs arbitrated are indistinguishable from those based on the Federal Securities Law. Accordingly, Bradford argues that the arbitration award is dispositive as to Counts 1 and 2 of plaintiffs' amended complaint. Bradford also relies on the case of *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir.1985), which held that an arbitration decision can have *res judicata* or collateral estoppel effect even if the underlying claim involves the Federal Securities Laws. *Id.* at 1360. There are two implicit assumptions in Bradford's argument: 1) that the arbitrators' award must have been based at least partially on the Mississippi Securities Law and common law fraud counts and that the arbitrators' damage calculations fully compensated plaintiffs for all their injuries; 2) that the issues involved in plaintiffs' claims under the Federal Securities Acts are the same issues involved in the plaintiffs' claims for common law fraud and violation of the Mississippi Securities Law.

Applying the proper standard for review on summary judgment, that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(c), Defendant Bradford's first assumption precludes, in the opinion of the court, the application of collateral estoppel because Defendant Bradford has failed to show that there is no material issue of fact as to whether the arbitrators' award was based only on common law fraud in violation of the Mississippi Securities Law and not partially or totally on breach of contract or breach of fiduciary duties. In point of fact, Bradford cannot show the method by which the arbitrators computed damages, nor can it show whether or not this computation method fully compensated plaintiffs for their injuries.

Defendants are unable to show that there is no genuine issue of fact because the arbitrators' one-page decision states only that they find in favor of plaintiffs for a specified amount. The arbitrators' decision offers no clue as to which causes of action they based their decision on or how they calculated plaintiffs' damages. Because of the uncertainty as to what aspects of the damage scenarios were considered by the arbitrators, the court is of the opinion that plaintiffs have a right to litigate in federal court the damage issue on their remaining claims. There is no guarantee that the arbitrators computed their award to compensate plaintiffs fully for all of their damages or whether the award was merely intended to compensate plaintiffs for those claims which were submitted to the arbitrators. Because there is no way for defendant Bradford to prove what counts of plaintiffs' claims form the basis of the arbitrators' decision or whether plaintiffs were fully compensated by the arbitrators' award, Bradford cannot present sufficient facts on this issue to obtain summary judgment.

Defendants' second assumption that the Federal Securities Act claims in plaintiffs' complaint are identical to the common law fraud and Mississippi Securities Law claims also is erroneous and precludes the application of collateral estoppel. The court notes initially that defendant offers no evidence to actually identify the specific issues presented to the arbitrators which defendant claims are identical to the issues which plaintiffs seek to litigate before this court. Defendant only asserts conclusively that plaintiffs' Federal Securities Act claims are "virtually indistinguishable from plaintiffs' claims for common law fraud and the Mississippi Securities Law." Defendants

Memo. at 5. Such a conclusory statement cannot survive the burden placed on defendant to come forward with sufficient facts dispelling or denoting the absence of any material issue as to whether the claims being litigated are the same as those submitted and decided in arbitration. In any event, defendants have not shown that the arbitrators' award was based on the fraud and Mississippi Securities Law counts in plaintiffs' complaint. In the opinion of the court, defendants could not make such a showing based on the brevity of the arbitrators' award. Numerous cases have held that an arbitration decision which does not elaborate on its findings cannot have collateral estoppel effect. As one court noted; "[T]he arbitrators never made or adopted any findings of fact, and this court may not ... infer the factual basis for the arbitrators' decision and then use those inferences to award ... summary judgment under the rubric of collateral estoppel". *The Sports Factory, Inc. v. Chanoff,* 586 F.Supp. 342, 346 (E.D.Pa.1984).

Even if the case of *Greenblatt* cited by Bradford supports an argument that the arbitrators' decision has collateral estoppel effect as to liability, *Greenblatt* does not support a collateral estoppel argument as to damages without some clear indication as to how those damages were computed and whether those computations fully compensated plaintiffs for their losses. The court rejects Bradford's argument that the arbitrators' award "must" have included the damages plaintiffs sought in Counts 1 and 2. For these reasons, the court holds that plaintiffs are not collaterally estopped from pursuing their claims under Counts 1 and 2 nor does the arbitrators' award constitute *res judicata* as to those claims.

**B. Summary Judgment on RICO Claims**

■ Bradford seeks summary judgment on plaintiffs' RICO claim based on an argument that this claim is collaterally estopped because plaintiffs failed to submit it to the arbitrators. According to Bradford, if plaintiffs are now permitted to litigate their RICO claim, plaintiffs would be guilty of "claim splitting." Bradford explains that inasmuch as the claim under RICO

was arbitrable, any arbitrable claim which could have been asserted under RICO was "merged" into the arbitrators' award.

The court is of the opinion that Bradford has mischaracterized or misconstrued this court's ruling as to the arbitrability of plaintiffs' RICO claim. The court held by its order of July 17, 1985 that plaintiffs' RICO claims were nonarbitrable. Bradford did not appeal or object to this ruling. Because Bradford did not challenge the ruling that the RICO claim was not arbitrable, plaintiffs did not submit this claim for resolution by the arbitrators. Bradford is now asking the court to penalize plaintiffs for failing to arbitrate a claim which this court ruled to be non-arbitrable. The court notes that the Fifth Circuit has recently held that RICO claims are arbitrable in the case of *Mayaja, Inc. v. Bodkin, supra,* as did the United States Supreme Court in the case of *Shearson/American Express, Inc. v. McMahon, supra.* This court's ruling on July 17, 1985, however, was based on the well-established precedent of *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) and *Sibley v. Tandy Corporation,* 543 F.2d 540 (5th Cir.1976) *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977), both of which held that RICO claims are not arbitrable. Clearly, arbitrable claims are to be arbitrated while non-arbitrable federal claims are to be decided in the federal forum. *See Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Even where the result would be possibly inefficient maintenance of separate proceedings, separate litigation of non-arbitrable federal claims is necessary to protect federally created rights. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985). The court holds, therefore, that plaintiffs should not be barred from pursuing their RICO claim.

■ Bradford argues, however, that plaintiffs have failed to state a claim under RICO. As defendant notes, an essential element of any RICO claim is that the plaintiff allege and prove that the defendant has, through the commission of two or more acts, engaged in a "pattern of racke-

teering activity", as defined in 18 U.S.C. Section 1961(5). *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1168 (5th Cir.1984); *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Additionally, in order to violate RICO, a defendant must first commit a pattern of racketeering activity, and then either use the money he derives from such activity or use the activity itself to: 1) invest in an enterprise; 2) acquire or maintain an interest in an enterprise; or, 3) conduct an enterprise's affairs. *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 481–483, 493, 105 S.Ct. 3275, 3278–79, 3284, 87 L.Ed.2d 346 (1985).

In ruling on a motion to dismiss for failure to state a claim, the court must accept as true the allegations in the opposing pleadings. *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Espinoza v. Missouri Pacific R. Co.*, 754 F.2d 1247 (5th Cir.1985). The plaintiffs' complaint must be allowed to stand "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). In this regard, plaintiffs allege in their amended complaint that defendant Vaughan committed the predicate acts under RICO, 18 U.S.C. Section 1961, of mail fraud, wire fraud, and securities fraud on numerous occasions within a ten-year period. Plaintiffs also allege that Vaughan violated RICO in that he derived income from the pattern of racketeering activities in which he was involved. Bradford is identified by plaintiffs as the RICO enterprise and is alleged by plaintiffs to be liable for Vaughan's acts on the theory of *respondeat superior*.

The court notes that the "pattern of racketeering activity" requirement under 18 U.S.C. Section 1961(5) is apparently met if the defendant commits any one of the acts listed in the statute and does so at least twice within a ten-year period. *R.A. G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1353 (5th Cir.1985). Recently, however, district court decisions within the Fifth Circuit have attempted to define the term "pattern". In one case, the mailing of two invoices to a single plaintiff, each invoice containing two misrepresentations, was found to constitute a "pattern" of racketeering activity. *Louisiana Power and Light v. United Gas Pipe Line*, 642 F.Supp. 781, 807–809 (E.D.La.1986). In another case, a pattern was found to exist where four separate plaintiffs were defrauded through several misrepresentations in a single scheme. *Verges v. Babovich*, 644 F.Supp. 150, 152 (E.D.La.1986). In this case, Bradford apparently does not challenge the plaintiffs' allegation that a pattern of racketeering activity existed; rather, Bradford argues that the plaintiffs have failed to allege facts which, if true, would constitute the underlying predicate acts of mail fraud, wire fraud, or securities fraud in the alleged pattern. The court does not agree with the position taken by Bradford.

Plaintiffs' amended complaint is replete with allegations that defendant Vaughan, while acting as an employee and agent of Bradford: 1) represented that he was a Certified Financial Planner, when he in fact was not; 2) represented that he was placing plaintiffs' monies in safe investments when in fact he was placing plaintiffs' monies in very speculative investments; 3) misrepresented the rate of return that plaintiffs were actually receiving on their investments; and 4) withheld and misrepresented material facts regarding the investment of plaintiffs' monies. Plaintiffs contend that these acts began in February 1983, and ended on or about March 9, 1984, meeting the "twice within ten years" requirement of 18 U.S.C. Section 1961(5). Plaintiffs assert that these acts were committed with the intent to defraud and that the acts were perpetrated using the mails and wire communications in interstate commerce. The court is of the opinion that these acts, if proven at trial, would establish the predicate acts of wire fraud, mail fraud, and securities fraud. Consequently,

Bradford is not entitled to dismissal of the plaintiffs' RICO claim.

Bradford also argues that plaintiffs have not adequately alleged the existence of an "enterprise" as defined in 18 U.S.C. Section 1961(4). As Bradford correctly notes, the RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2529, 69 L.Ed.2d 246 (1981). Because Vaughan was an employee of Bradford, defendant Bradford argues that there can be no separate "enterprise" within the meaning of 18 U.S.C. Section 1961(4) as between an employer and its employee.

Some courts have held that as long as the RICO defendant whose activities are being punished and the RICO enterprise are separate, nothing in RICO prevents the enterprise from being liable for the defendant's RICO violations under common law theories such as *respondeat superior*. *See Schacht v. Brown*, 711 F.2d 1343 (7th Cir. 1983), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *Tryco Trucking Company, Inc. v. Belk Stores Services, Inc.*, 634 F.Supp. 1327 (W.D.N.C.1986); *Morley v. Cohen*, 610 F.Supp. 798 (D.Md. 1985); *Bernstein v. IDT Corp.*, 582 F.Supp. 1079 (D.Del.1984). Other courts have held, conversely, that a RICO enterprise cannot be found liable under *respondeat superior* for the acts of the RICO defendant. *See Brent Liquid Transport, Inc. v. GATX Leasing Corp.*, 650 F.Supp. 467 (N.D.Miss. 1986); *Dakis v. Chapman*, 574 F.Supp. 757 (N.D.Cal.1983); *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20 (N.D.Ill. 1982). Those courts rejecting *respondeat superior* arguments have suggested that the corporation was merely a passive victim of the RICO defendant's activities and not an active participator. *Dakis, supra,* and *Parnes, supra.* The court is of the opinion that this is not a matter of concern in the case *sub judice:* plaintiffs have alleged that the defendant Vaughan, a vice-president with Bradford, is the RICO defendant whose acts are sought to be punished and Bradford is the RICO enterprise. In essence, plaintiffs argue that Vaughan acted as an employee of the RICO enter-

prise Bradford, but that Vaughan and Bradford are separate and distinct entities and that Bradford was not a passive victim of Vaughan's activities. This is a material fact on which Bradford has failed to show the absence of any genuine issue. Bradford also has not shown that it is entitled to judgment as a matter of law on the plaintiffs' RICO claims. Summary disposition of the plaintiffs' RICO claim at this juncture would, therefore, be inappropriate. Accordingly, defendant Bradford's motion for summary judgment as to the plaintiffs' federal securities claims and RICO claims is denied.

### IV. *Defendant Vaughan's Motion in Limine*

Vaughan has filed a motion entitled "Motion in Limine of Defendant Gary Vaughan" which requests that:

> [T]he court enter an Order pursuant to his Motion in Limine, adjudicating that all matters which have been adjudicated by arbitration, or could have been adjudicated by arbitration or otherwise resolved by and between Plaintiff and Defendant Bradford are precluded from relitigation by and between Plaintiff and Defendant Vaughan.

Defendant Vaughan's Motion at 2.

While the motion is labeled as a motion in limine, the court is of the opinion that the motion is not properly addressed to any evidentiary issue or dispute and is not properly before the court as an in limine motion. Rather, the motion seeks to have any claims against Vaughan considered as *res judicata* based on the arbitrators' award. As discussed above, with respect to the same type motion made by defendant Bradford, the court is of the opinion that the arbitrator's award has no *res judicata* effect as to any of the claims against defendant Vaughan which were not presented to the arbitrators. *See supra*, at 627–628. Additionally, Vaughan all but admits that the motion is untimely filed by noting that the documents involved in the bringing of the motion were allegedly not produced by the plaintiffs until after the pretrial conference in this case. Vaughan asks that the

court consider as inapplicable "any agreements relative to the filing of motions or setting of deadlines which preceded the document production by plaintiffs submitted later than said deadline...." Defendant's Brief at 1. This request would require the court to totally ignore the United States Magistrate's Scheduling Order entered in this case on December 17, 1986. This the court cannot do. As counsel for defendant Vaughan knows or should know, the magistrate's scheduling order provided that "any motions to be filed shall be filed on or before February 23, 1987." Vaughan's motion was not filed until June 3, 1987, after the deadline for filing of all motions except motions in limine. The defendant's brief in support of the motion states clearly that the motion is "an attempt to preclude relitigation of issues." Such a characterization, in the opinion of the court, clearly indicates that the motion is not properly made as a motion in limine inasmuch as it is not addressed to any particular piece of evidence or type of evidence. In essence, Vaughan would have the court exclude all evidence related to the plaintiffs' claim against Vaughan based on this motion in limine. Unquestionably, the proper motion Vaughan should have made is a motion to dismiss. That motion cannot now be brought under the inaccurate label of a motion in limine.

Rule 8(*l*) of the Uniform Local Rules of the United States District Court for the Northern and Southern Districts of Mississippi provides:

> Any motion served beyond the motion deadline imposed in the Scheduling Order entered pursuant to Rule 6(d), with the exception of in limine evidentiary motions, may be denied solely because the motion is served untimely.

Since the defendant's motion is not properly characterized as an in limine motion, the court finds that the motion should be denied as untimely. Although Vaughan suggests that he was prevented from bringing this motion prior to the deadline imposed by the magistrate because of the plaintiffs' alleged failure to produce documents on which the motion is based, the court finds no indication that Vaughan made any attempt to compel production of the documents he sought.

The assistance of the court pursuant to an order to compel under Rule 37 of the Federal Rules of Civil Procedure was available to Vaughan at all times prior to the deadline for filing of motions. The court finds no reason to excuse Vaughan's failure to avail himself of these procedures to obtain any documents which the plaintiffs failed to produce. The motion in limine will be denied.

An order in accordance with this opinion shall this day be issued.