(84 P.3d 613)

No. 90,652

Samantha G. O'Keefe, *et al.*, *Appellants,* v. Merrill Lynch & Co., D/B/A Merrill Lynch, Pierce, Fenner & Smith Incorporated, *et al.*, *Appellees.*

Opinion filed February 20, 2004.

*James T. Wiglesworth*, of Overland Park, and *Kenneth J. Catanzarite*, of Catanzarite Law Corporation, of Anaheim, California, for appellants.

*Allison M. Murdock*, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, and *J. Margaret Tretbar*, of Kansas City, Missouri, for appellees.

Before Green, P.J., Marquardt and Malone, JJ.

GREEN, J.: Plaintiffs Samantha G. O'Keefe, Patrick H. O'Keefe, Anthony M. O'Keefe, Jennifer D. O'Keefe Bryan, and Molly D. O'Keefe appeal the trial court's granting of summary judgment for defendants Merrill Lynch & Co., Merrill Lynch & Co. International Bank, Thomas M. Freeman, Richard J. Paradise, Bradley Stratton, and Chad G. Bushaw. On appeal, the plaintiffs contend that the trial court improperly granted summary judgment in favor of the defendants based on res judicata and collateral estoppel. We disagree and affirm.

The facts are complicated but largely undisputed. At the center of the disputes was Dolores W. O'Keefe, a wealthy woman. Dolores had two sons, Michael and Anthony, and a daughter, Patricia.

In 1990, Dolores executed various estate planning documents creating the 1990 Trust and a will which provided, upon her death, that the assets in her probate estate would pour over into the 1990 Trust. Anthony was named attorney-in-fact and co-trustee. The 1990 Trust was to be divided into three sub-trusts for her three children after Dolores' death, and the sub-trust share of any child who predeceased Dolores was to be distributed outright to the issue of the predeceased child upon Dolores' death.

In late 1990, after the execution of the estate planning documents, Dolores suffered a stroke, which incapacitated her. Her children moved her from her home in Idaho to an assisted care facility in Johnson County, Kansas.

In November 1995, Anthony petitioned the court to establish a conservatorship for Dolores naming his accountant, John A. Taylor, as conservator.

In July 1996, Taylor petitioned the court to modify Dolores' estate plan to authorize the creation of the 1996 Trust, including sub-trusts for her three children. The plan also provided for a gift of 1,005,000 shares of Albertson's Inc. stock from Dolores to the co-trustees of the 1996 Trust and the transfer of her remaining assets to the 1990 Trust on the condition the 1990 Trust pay the gift and income taxes incurred upon the stock transfer. The Johnson County District Court approved the petition and the 1996 Trust was created and the Albertson stock was transferred. Starting in April 1996, during the conservatorship, Merrill Lynch's repre-

sentatives advised Anthony, Michael, and Patricia about the proposed gift transaction and the tax liabilities which were associated with the transaction.

In September 1996, Michael died in a private airplane crash. In April 1997, a "zero cost collar" transaction was made where the 1990 Trust hedged the value of 748,866 shares of Albertson's stock it held; the Trust then pledged the hedged stock to Merrill Lynch as collateral for a loan to pay the gift tax on the stock transfer to the 1996 trust.

In March 1998, under a "liquidity contract" Merrill Lynch loaned the 1990 Trust $33,434,000 in order to modify the collar. This modification was an attempt to mitigate the negative effect on the 1990 Trust and to benefit from the price increase of the Albertson's shares.

In July 1998, the grandchildren of Dolores filed a petition in Johnson County District Court in case No. 98C8568, against Anthony, Patricia, Taylor, and others, alleging defendants acted outside of their authority to create the 1996 Trust, negligently breached the duty not to change Dolores' estate plan which adversely affected plaintiffs' rights as beneficiaries, fraudulently and intentionally failed to give plaintiffs notice of the modification of Dolores' estate plan, breached fiduciary duties owed to plaintiffs, and other claims. Dolores died in January 1999.

In April 2000, the district court dismissed the plaintiffs' claims against defendants Anthony and Patricia with prejudice, after they settled case No. 98C8568.

In June 2000, John Biscanin, a co-administrator of the estate of Dolores, and the grandchildren filed a petition in Johnson County District Court in case No. 00CV03878 against Prudential Securities, Inc., alleging breach of fiduciary duty, negligence, and intentional interference with expectation of inheritance.

In January 2003, Biscanin filed a claim for arbitration with the National Association of Securities Dealers (NASD). Biscanin was co-administrator of Dolores' estate, successor conservator of Dolores, successor trustee of the 1990 Trust, and successor trustee of Michael's sub-trust of the 1996 Trust. The defendants were Merrill Lynch & Co., Merrill Lynch & Co. International Bank, Freeman,

Paradise, Stratton, and Bushaw. Biscanin alleged claims for negligence, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, violations of the federal law and rule, and restitution and disgorgement.

In the arbitration, Biscanin alleged that in 1996, Dolores' three children received financial advice from the Merrill Lynch defendants concerning the gift of Albertson's stock to the 1996 Trust and the tax liability that would arise from the gift. According to Biscanin, the transactions were mispriced, inappropriate and wrongful, and caused adverse tax consequences.

In December 2000, the grandchildren filed a petition in Johnson County District Court in case No. 00CV07951, against the same Merrill Lynch defendants, which is the case we are asked to decide. The grandchildren asserted that the defendants (collectively Merrill Lynch) negligently breached the duty of care they owed to them and that they suffered damages of more than $75,000. The grandchildren also asserted Merrill Lynch intentionally interfered with the grandchildren's expectation of inheritance and they suffered damages of more than $75,000.

In July 2001, the district court denied the motion to stay the arbitration. The court allowed the Merrill Lynch's motion to join Biscanin as an additional party in the district court case. The court reserved the right to consider the challenges by Merrill Lynch if the plaintiffs sought to certify or enforce any arbitration award. The court stated: "Specifically, if an award is made to the plaintiffs in arbitration, the Court requests the arbitration panel to state in its ruling which causes of action it found to be meritorious and to allocate what amount of damages it awards for each of those causes of action."

In August 2001, Merrill Lynch moved for summary judgment for the following reasons: (1) the grandchildren's claims were time-barred; (2) their negligence claim failed because of the lack of standing and no duty owed; (3) a claim of intentional interference with inheritance rights was not recognized by the Kansas courts, and even if it were, no facts supported the claim; and (4) Biscanin's claims were time-barred.

On July 2, 2002, the arbitration panel issued a decision; it dismissed the case against the individually named respondents and awarded Biscanin $100,000 for compensatory damages.

In September 2002, Merrill Lynch moved for summary judgment based on the NASD arbitration award.

In October 2002, the district court confirmed the arbitration award on Merrill Lynch's motion. The court noted that the arbitration award did not specify the particular claims for relief which were the basis for $100,000 liability of Merrill Lynch, did not specify the testimony or other evidence which supported the award, and did not make any statements about the elements of the claims or the law applicable to the claims or defenses. In a journal entry filed in January 2003, the court further stated in part:

"14. This Court already has jurisdiction over the parties in the NASD Arbitration. Each of the Merrill Lynch Defendants named as a respondent in the NASD Arbitration is also a party-defendant in Case No. 00-CV-07951 captioned above (Petition for Damages, filed December 28, 2000). At a hearing on May 9, 2001, this Court granted the Merrill Lynch Defendants' motion to join Plaintiff Biscanin as a necessary party in Case No. 00-CV-07951 and required Plaintiff Biscanin and the Merrill Lynch Defendants to arbitrate those claims already asserted in the NASD Arbitration.

. . . .

"18. Aside from the issue of jurisdiction, the only ground that Plaintiff Biscanin asserts in opposition to the Motion to Confirm and in support of vacating the Award is that the Arbitration Panel 'manifestly disregarded applicable and well-settled law concerning the evidence that the adverse parties violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission and that John Patrick Biscanin, in his representative capacity as alleged in the NASD statement of claim and in the action filed in United States District Court, suffered loss, injury and damage as the proximate result of securities law violations by adverse parties.'

. . . .

"20. This Court may not substitute its own judgment for the Arbitration Panel's judgment about the credibility of witnesses, the sufficiency of evidence or other factors that might have affected the decision in the Award.

"21. The Arbitration Panel was not required to state findings of fact or conclusions of law or otherwise to state the reasons for the decision in the Award.

"22. The Court concludes that, as a matter of law, Plaintiff Biscanin cannot prove his allegation of a 'manifest disregard of the law' because the Arbitration panel did not make any statements about the law. As discussed above . . . the

Award contains no evidence of the Arbitration Panel's understanding of the law, nor does the Award reveal the basis for the decision that Defendant [Merrill Lynch] is liable to Plaintiff Biscanin in the amount of $100,000 or that all other claims are denied with prejudice. Under these circumstances, Plaintiff Biscanin cannot meet its burden of proof in opposing the Award on the ground of 'manifest disregard of the law.' "

In January 2003, Merrill Lynch filed a memorandum in support of summary judgment based on preclusive effect of the arbitration award. The district court granted summary judgment in favor of Merrill Lynch, holding the arbitration award barred the grandchildren's claims for negligence and intentional interference with inheritance rights under the doctrine of claim and issue preclusion.

## Standard of Review

"The standard of review for a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

Further, whether the doctrine of collateral estoppel or res judicata applies in a certain situation is a question of law, and an appellate court may analyze the question using unlimited de novo review. *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, Syl. ¶ 1, 949 P.2d 602 (1997), *cert. denied* 525 U.S. 831 (1998).

## Res Judicata

Under the doctrine of res judicata, a final judgment by a court of competent jurisdiction on the merits of an action is conclusive, not only on all matters which were actually litigated, but also on all matters which could have been litigated by the parties or their privies in that action. *Stanfield*, 263 Kan. 388, Syl. ¶¶ 3, 4.

Before addressing the issue of res judicata, we note that the grandchildren have conceded that res judicata bars them from relitigating their negligence claim. Therefore, the following discus-

sion concerns only the claim of intentional interference with the inheritance rights.

In res judicata, the first judgment is conclusive when four conditions concur: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988).

The grandchildren argue res judicata does not apply because there were two elements missing: identity of the cause of action, and identity of persons and parties to the action. First, the grandchildren argue res judicata has no applicability to this case because the claim they raise in the district court action is not the same claim which the arbitration panel previously revolved.

## 1. Identity of the cause of action

The grandchildren argue that Biscanin did not assert an action against the Merrill Lynch defendants for intentional interference with the inheritance rights in an arbitration proceeding. The grandchildren stated:

"Although the facts upon which the action for wrongful interference may be similar, or perhaps even identical to those Biscanin relied for his representative action before the NASD, the claim—which is whether the moving parties unlawfully interfered with the giving or leaving of property to the Grandchildren by Dolores O'Keefe—was not tried."

This similar argument was made by the plaintiff in *Stanfield*. In federal court, the plaintiff made trademark claims based on the Lanham Act. On the other hand, in state court, common-law claims of misappropriation and false light were made by the plaintiff. In rejecting this argument, our Supreme Court explained the meaning of the term "claim" within the context of res judicata. The court declared that the same factual transactions or series of connected transactions are one "claim," regardless of the number of substantive legal theories that were available to the plaintiff based on those facts. 263 Kan. at 401 (citing the Comments to Restatement [Second] of Judgments §§ 24 and 25 [1980]).

The *Stanfield* court found both actions arose out of "a common nucleus of operative fact—the defendants' labeling of certain products with the term 'Stanfield' after 1990." The facts needed to prove all the legal theories raised by the plaintiff were related in time and in origin, and the witnesses and proof required in the state action would tend to overlap the witnesses and proof which would have been utilized in the federal court. The court concluded that even though the defendants' alleged acts invaded several of the plaintiff's interests under several different legal theories, there was still but one transaction or "claim." 263 Kan. at 402.

The arbitration panel described the facts upon which the claims were based as follows. In 1996, Merrill Lynch gave financial advice to the O'Keefe family to gift the Albertson stock to Dolores' three children and to create the 1996 Trust. The stock had a low tax basis and the sale of the stock to pay the gift tax would incur a significant capital gains tax. Accordingly, Merrill Lynch proposed the 1990 Trust adopt a hedging strategy, where the trust used the stock as collateral for a loan to pay the tax. By April 1997, when Merrill Lynch placed the collar on the stock, the price of the stock had declined (from $39 to $31). Merrill Lynch's plan assumed Dolores would survive the gift by at least 3 years and all of her children would survive her. However, Michael died in September 1996 and Dolores in January 1999. Merrill Lynch's failure to plan for the contingency of the death of Michael and Dolores caused additional estate taxes as a result.

In this case, the grandchildren alleged the same facts regarding Merrill Lynch's financial advice concerning the gift of Albertson stock, zero-cost collar transaction in April 1997, liquidity contract in March 1998, and other transactions dealing with the sub-trust of Michael.

The facts in the arbitration and in this case are the same, regardless of the number of different substantive legal theories that are available to the grandchildren based on those facts. See *Stanfield*, 263 Kan. at 402.

2. Identity of persons and parties to the action

The grandchildren simply argue they were not parties to the arbitration and they were not in privity. The plaintiff in the arbitration was Biscanin, as co-administrator of the estate of Dolores, as successor conservator of Dolores, as successor trustee of the 1990 Trust, and as successor trustee of Michael's sub-trust of the 1996 Trust. On the other hand, the plaintiffs in this case are the grandchildren and Biscanin. Clearly, the grandchildren were not named as parties to the arbitration.

Nevertheless, the judgment binds not only the parties to the action but also those who are in privity with them. Under Kansas law, an administrator of an estate is sufficiently in privity with heirs or beneficiaries of an estate to be subjected to principles of claim preclusion. *Wright v. Brotherhood Bank & Tr. Co.*, 14 Kan. App. 2d 71, 74, 782 P.2d 70 (1989) (quoting *Carter v. City of Emporia, Kan.*, 815 F.2d 617, 620 [10th Cir. 1987]).

Biscanin represented, as administrator and trustee for the individual beneficiaries of Dolores' estate, her 1990 Trust and 1996 Trust including the sub-trusts. The grandchildren were beneficiaries of Michael's sub-trust of the 1996 Trust. Based on *Wright*, the grandchildren are in privity with Biscanin. In conclusion, the grandchildren are bound by the arbitration award which was a final judgment on the merits of the claims. Therefore, the grandchildren's action in district court is barred by the doctrine of res judicata.

Collateral Estoppel

In addition, the trial court determined that Merrill Lynch was entitled to summary judgment based on the doctrine of collateral estoppel. The general principle of collateral estoppel is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies. Even if the second suit is for a different cause of action, the right, question, or fact once determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. *Grim-*

*mett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, 487, 988 P.2d 755 (1999) (quoting *Southern Pacific Railr'd v. United States*, 168 U.S. 1, 48-49, 42 L. Ed. 355, 18 S. Ct. 18 [1897]).

Under Kansas law, for the doctrine of collateral estoppel to apply, three factors must be present: (1) that a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) that the parties must be identical or in privity; and (3) that the issue litigated must have been determined and necessary to support the judgment. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. at 690.

1. Arbitration award as a prior judgment on the merits

The grandchildren argue the arbitration award was not a judgment on the merits of this case. They rely on the holdings of *Wing v. J.C. Bradford & Co.*, 678 F. Supp. 622 (N.D. Miss. 1987).

In *Wing*, customers brought an action against a broker and broker's employee alleging violations of federal securities law, RICO claims, common-law fraud, breach of contract, and breach of fiduciary duties in violation of the state law. The court directed that arbitration proceed as to all of plaintiffs' state law claims, ruling the federal securities law and RICO claims were not arbitrable. After arbitration, plaintiffs moved to confirm arbitration award and defendants moved for summary judgment on federal securities law and RICO claims.

In *Wing*, defendants made two implicit assumptions in their argument of collateral estoppel: (1) the arbitration award must have been based at least partially on the state law and the arbitration award fully compensated plaintiffs for all their injuries, and (2) the issues involved in plaintiffs' claims under the federal law were the same issues involved in their state law claims. The federal district court noted the arbitrators' decision offered no clue as to which causes of action they based their decision on or how they calculated the damages. The court found there was no way for defendants to prove what counts of plaintiffs' claims formed the basis of the arbitrators' decision or whether plaintiffs were fully compensated by the award. Further, defendants offered no evidence to actually

identify the specific issues presented to the arbitrators. In conclusion, the court held collateral estoppel was not applicable. 678 F. Supp. at 628-29.

The grandchildren argue in this case, just as in *Wing*, the court ruled their individual claims were not arbitrable "because they were not parties to the account agreement." However, there is no court direction in this case deciding which issues should proceed to the arbitration and which issues were not arbitrable as in *Wing*. Biscanin asserted Merrill Lynch's conduct reduced the amount of money in Dolores' estate, the 1990 Trust and the 1996 Trust, which would be available for the grandchildren to inherit. Biscanin was representing the trustees and beneficiaries who suffered damages caused by the conduct of Merrill Lynch. Under these circumstances, the arbitration award was reached on the merits and it determined the rights and liabilities of the parties including the grandchildren.

Furthermore, the grandchildren argue that the ultimate facts were not tried, pointing to the fact, as an example, that the wrongful conduct of Anthony and Patricia cannot be asserted as a defense by Merrill Lynch in their intentional interference action.

The arbitration award did not specifically list findings of fact; however, it summarized the facts as pertinent to the claims asserted by Biscanin. The Merrill Lynch defendants asserted in the arbitration that they were not hired to participate and did not participate in the tax and estate planning that resulted in the 1996 Trust and subsequent gifts. Further, they argued that they fulfilled their brokerage duties owed to their customers by fulfilling their clients' orders promptly and appropriately. Merrill Lynch defendants did not dispute the transactions made in dealing with the estate and the trusts and the consequences of those transactions. Biscanin's petition before the NASD listed detailed facts surrounding the transactions made under financial advice given by Merrill Lynch. Furthermore, the record shows that the grandchildren had brought an action against Anthony and Patricia, among others, but reached a settlement with them in 2000.

Merrill Lynch argues that the grandchildren are precluded from relitigating the amount of damages that Merrill Lunch's conduct

caused to the estate and the trusts, citing *City of Bismarck v. Toltz, King, Duvall, et al.*, 855 F.2d 580 (8th Cir. 1988). In *Bismarck*, the city commenced the contract action against an engineering firm, a sewer project contractor, and its surety. While this action was stayed, the arbitration panel ruled the city owed the contractor $885,058 and the contractor owed the city $612,463. Both the city and the contractor stipulated to dismiss the contractor and its surety as parties to this action. The city alleged improper supervision and inspection of the construction against the engineering firm which moved to dismiss based on collateral estoppel and accord and satisfaction.

The court affirmed the granting of summary judgment, holding the city had a full and fair opportunity in the arbitration proceedings to litigate the amount of damages resulting from the faulty construction of the sewer project and received satisfaction in full for the injury suffered as a result of the sewer system. 855 F.2d at 583-84.

In this case, the grandchildren's damages were caused by the estate's and trusts' transactions made based on the financial advice of Merrill Lynch. The grandchildren litigated the damages in the arbitration proceedings through Biscanin as the administrator and trustee. Just as the faulty construction of the sewer project caused the damages to the city, the faulty advice by Merrill Lynch in this case caused the injury to the estate and the trust thereby impacting on the grandchildren's inheritance. An implicit conclusion of the arbitration was that Merrill Lynch intentionally misrepresented the transactions and their results or negligently violated the duties owed, or both, the O'Keefe family. In any event, the damages would be the same. The claimed damages in this case for interference of inheritance were caused by the same actions of Merrill Lynch. The grandchildren had a full satisfaction for their injury in the arbitration and cannot relitigate the issue.

The grandchildren further argue that because the arbitration panel had failed to make findings of fact, issue preclusion cannot be applied "because of inherent ambiguity in the arbitration award," citing *L.R. Foy Constr. Co. v. Professional Mechanical Contractors*, 13 Kan. App. 2d 188, 766 P.2d 196 (1988).

In *L.R. Foy*, Foy, a general contractor, brought an action against Professional Mechanical Contractors (PMC), its subcontractor, and PMC's surety, seeking both compensatory and punitive damages for PMC's alleged negligence in performing its contractual duties. The court applied both res judicata and collateral estoppel to bar this action based upon an earlier arbitration award rendering a decision in favor of PMC against Foy and its surety. 13 Kan. App. 2d at 189, 191. The court stated Foy could not prevail in this civil action without establishing, contrary to the arbitrators' finding, that PMC was the breaching party. Therefore, the claim was barred. 13 Kan. App. 2d at 194.

The *L.R. Foy* case does not support the grandchildren's assertion that when the arbitration award made no specific findings, then issue preclusion does not apply. The arbitration award states the facts and Biscanin's allegations of wrongdoing by Merrill Lynch. The arbitrators did not specify which legal theories that Biscanin raised formed the basis for the award of $100,000. However, the Merrill Lynch defendants categorically denied the allegations of wrongdoing; they did not raise a specific defense to each of the legal theories alleged by Biscanin. Under the facts of this case, the arbitration award was based upon ultimate facts as disclosed by the pleadings and judgment and the same as the facts alleged in the district court action under *Jackson Trak*, 242 Kan. at 690.

The grandchildren finally argue the arbitration award does not bar the action filed in the district court, relying on *Artman v. Prudential-Bache Securities, Inc.*, 670 F. Supp. 769 (S.D. Ohio 1987). In *Artman*, the issue was whether the arbitration award would bar the action in the district court filed against a securities broker for federal securities law violations and pendent state law violations. Previously, the court denied defendant's motion to compel arbitration with regard to plaintiff's federal securities laws claims but granted the motion with respect to the state law claims. The arbitration panel awarded $40,000 in full settlement of all claims submitted.

The federal district court denied the motion for summary judgment, holding (1) that it was impossible to determine what issues were actually litigated in the arbitration; (2) that there were gen-

uine issues of material fact; and (3) that the United States Supreme Court has recently articulated the strong policy of providing a judicial forum for federal securities laws claims despite the presence of an arbitration agreement. 670 F. Supp. at 774.

The situation in this case is quite different from *Artman*. In this case, the court did not direct the parties to argue certain claims or issues to proceed in the arbitration. Moreover, no policy reason exists why the grandchildren's intentional interference with an inheritance claim should have been litigated in the state court. As a result, *Artman* is factually distinguishable.

The arbitration award in this case was based upon ultimate or operative facts as disclosed by the pleadings and judgment. These same facts are alleged in the district court action. Therefore, the prior judgment by the arbitrators on the merits bars the grandchildren from relitigating the same issue. See *Jackson Trak*, 242 Kan. at 690.

## 2. Parties

The grandchildren argue Biscanin did not represent their interest in arbitration and their relationship to Biscanin does not come within the definition of privity in Kansas. The grandchildren cite *Goetz v. Board of Trustees*, 203 Kan. 340, 454 P.2d 481 (1969). In *Goetz*, the court stated there was no generally prevailing definition of privity. Instead, the question as to who are privies requires careful examination into the circumstances of each case. The *Goetz* case held that all persons are privies to a judgment who succeed to the estate, interest, or right to the property thereby adjudicated or affected, where such succession was derived through the party to the action and accrued subsequent to the commencement of that suit or subsequent to the rendition of the judgment. One is not a privy to a judgment where his or her succession to the rights of property occurred previous to the institution of the suit. 203 Kan. at 350-51.

The grandchildren's reliance on this holding is misplaced. The grandchildren note Dolores was incapacitated in 1990 and died in 1999, and their rights to inherit were vested long before the arbitration award. However, this fact does not lead to their conclusion

that they were not in privity to Biscanin. When Biscanin initiated the arbitration proceedings before NASD, he was representing the interests of Dolores' estate, the 1990 trust, and Michael's sub-trust of the 1996 trust—clearly including the interests of the grandchildren.

The grandchildren were beneficiaries of the trusts and the estate of Dolores; they did not succeed to the estate from Biscanin. As discussed earlier, an administrator of an estate is sufficiently in privity with heirs or beneficiaries of an estate to be subjected to principles of claim preclusion under *Wright*, 14 Kan. App. 2d at 74. As a result, the grandchildren were bound by the arbitration award obtained by Biscanin.

3. Litigated issues

The grandchildren repeat their arguments the arbitration award made no findings and so it is impossible for the court to determine which issues were litigated. The grandchildren argue we do not know which claims asserted by Biscanin were the bases of the arbitration award, and therefore, the court should not have barred their action of intentional interference with the granting of summary judgment.

Biscanin raised negligence, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, violation of the federal securities law, and restitution and disgorgement. Biscanin requested compensatory damages in the amount of $40 million, disgorgement of fees and commission in the amount of $5 million, and reasonable punitive damages. The arbitration panel did not specify which legal theory was used to award Biscanin with $100,000.

No matter what theory upon which the arbitration award was based, the issue was whether Merrill Lynch engaged in some kind of wrongdoing in dealing with the estate of Dolores. The issue of whether Merrill Lynch intentionally interfered with the inheritance rights of the grandchildren in this case is a different cause of action. Nevertheless, the same transactions and financial advice by Merrill Lynch were the basis for both arbitration and this case. The arbitration panel found Merrill Lynch at fault and gave an

award of compensatory damages to Biscanin. The grandchildren's new cause of action raised in this case was determined by the arbitration panel. See *Grimmett*, 26 Kan. App. 2d at 487.

Affirmed.