**INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, AFL–CIO, Plaintiffs-Appellees,**

v.

**NATIONAL ELEVATOR INDUSTRY, INC., Montgomery Elevator Company, Elevators, Inc., and Fairhall Elevator, Inc., Defendants-Appellants.**

**Cal. No. 1314, Docket 85–7228.**

United States Court of Appeals, Second Circuit.

Argued June 20, 1985.

Decided Sept. 12, 1985.

Sally M. Armstrong, Washington, D.C. (O'Donoghue & O'Donoghue, Washington, D.C., Franklin K. Moss, Cohen, Weiss & Simon, New York City, of counsel), for plaintiffs-appellees.

Charles O. Strahley, New York City, (Michael T. McGrath, Putney, Twombly, Hall & Hirson, New York City, of counsel) for defendants-appellants.

Before VAN GRAAFEILAND and PRATT, Circuit Judges, and RE, Chief Judge, United States Court of International Trade.[*]

VAN GRAAFEILAND, Circuit Judge:

National Elevator Industry, Inc. and three elevator companies appeal from a judgment of the United States District Court for the Southern District of New York (Broderick, J.) compelling them to arbitrate discharge grievances with the International Union of Elevator Constructors, AFL–CIO. For reasons hereafter discussed, we affirm.

National is a New York membership corporation which operates as a trade association of employers in the elevator construction, maintenance and repair industry. Montgomery Elevator Company and Elevators, Inc. are two of its members. Fairhall Elevator, Inc. is an independent company in the same industry. For over fifty years, National has negotiated standard bargaining agreements with the Union on behalf of its members. The Union also has negotiated agreements with independent employers such as Fairhall, which incorporate by reference the terms of the Standard Agreements.

The three most recent Standard Agreements have had five year terms, commencing in 1972, 1977 and 1982. Each has contained an Article XV entitled "Arbitration", which prescribes a procedure for the reso- lution of all differences and disputes regarding the application and construction of the Agreement. In substance, Article XV establishes a National Arbitration Committee, consisting of three representatives appointed by National and three appointed by the Union. Any dispute which cannot be resolved at the local or regional level is to be referred to the Committee. If the Committee is unable to reach a decision or is deadlocked, the dispute is to be submitted to an impartial arbitrator, whose decision shall be final and binding.

The instant litigation involves grievances over the discharge of three employees by appellant companies, which occurred while the 1977 Agreement was in effect. When the grievances were submitted to the National Arbitration Committee, the Committee deadlocked on each of them. Upon appellants' subsequent refusal to submit the grievances to an impartial arbitrator, the Union commenced this action seeking to compel such submission. In the alternative, the Union requested a judgment declaring that its members were not precluded by the Standard Agreement from striking over unresolved employee discharge disputes. Following the filing of a joint stipulation of fact, each side moved for summary judgment. The district court granted the Union's motion and denied appellants'.

In appealing from the district court's judgment, appellants rely heavily, but erroneously, on two decisions by prior arbitrators under the 1972 Agreement. In 1973, one James Haigh was discharged by the General Elevator Company, a National member, and his discharge grievance eventually was submitted to an impartial arbitrator. Although it appears that the issue of arbitrability was not included in the submission to arbitration but was raised belatedly by National at the first hearing, the arbitrator held on March 7, 1974 that Haigh's grievance was not arbitrable before him. In 1975, a different arbitrator held that a dispute regarding a two-week

[*] Sitting by designation.

suspension was arbitrable. In so holding, the second arbitrator distinguished disputes over suspensions from those arising out of terminations.

Contending that the instant action was brought for the purpose of vacating the two prior decisions, and expounding legal principles applicable to proceedings of that nature, appellants argue that the district court erred in "overturning" the prior decisions. This argument is without merit. The prior arbitrations involved different employees and a different agreement, and the parties did not ask the arbitrators to hand down decisions of a generalized nature that would be applicable to other employees and subsequent agreements. *See Oil, Chemical & Atomic Workers International Union, Local 4–367 v. Rohm & Haas, Texas, Inc.,* 677 F.2d 492, 493 (5th Cir.1982) (per curiam). The former decisions are not the subject of this litigation, and, for a good reason, have no binding precedential effect herein.

■ As a general rule, an arbitrator's decision will not be set aside on direct review despite the fact that he may have misinterpreted either the facts or the law. *Marcy Lee Manufacturing Co. v. Cortley Fabrics Co.,* 354 F.2d 42, 43 (2d Cir.1965) (per curiam); *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir.), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). The same principle applies to an arbitrator's alleged misinterpretation of a contract. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). However, if an arbitrator's decision is unsound, it would not make good sense to treat it as binding in subsequent arbitrations. *See Connecticut Light & Power Co. v. Local 420, International Brotherhood of Electrical Workers,* 718 F.2d 14, 20 (2d Cir.1983). Clearly, such a decision would not be binding in a later proceeding if it involved arbitrability, which, in the absence of a specific agreement to the contrary, must be determined independently by the court. *Wire Service*

*Guild, Local 222 v. United Press International, Inc.,* 623 F.2d 257, 259 (2d Cir.1980); *Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret A.S.,* 598 F.2d 1264, 1266 (2d Cir.1979). Here, the district court quite properly made an independent determination of the arbitrability issue. *See International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 491, 92 S.Ct. 1710, 1712, 32 L.Ed.2d 248 (1972); *Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union 206,* 682 F.2d 301, 303 (2d Cir.1982) (per curiam). The only issue that remains, therefore, is whether the district court's determination was correct.

As already pointed out, Article XV of the Standard Agreement provides for ultimate resolution by independent arbitration of all differences and disputes regarding the application and construction of the Agreement. National argues, however, that this broadly worded clause is limited by paragraph 4(e) of Article XXII of the 1977 Agreement which reads:

It is understood and agreed that prior to terminating an employee for unsatisfactory performance who is to be replaced under this paragraph or any other employee, the Employer will give a written warning to the employee with a copy to the Business Representative in order that the employee be given an opportunity to improve his work performance. Such a termination may be submitted as a grievance to the National Arbitration Committee as provided under Article XV as a final source of appeal.

National contends that the last sentence of paragraph 4(e) makes submission to the National Arbitration Committee the final step in the grievance procedure. The Union points out, however, that paragraph 4 of Article XXII deals generally with plant relocation and the transfer and replacement of employees affected thereby, a limited category into which none of the three grieving employees fit. Moreover, says the Union, the phrase "as a final source of appeal" in paragraph 4(e) does not clearly

and unmistakably prohibit resort to impartial arbitration.

 It is by now common knowledge that there is a strong federal policy favoring arbitration. *See Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 254–55, 97 S.Ct. 1067, 1073–74, 51 L.Ed.2d 300 (1977). Consequently, where, as here, the arbitration clause is broad, any claim that falls within its scope will be considered arbitrable absent compelling proof to the contrary. *Id.* at 255, 97 S.Ct. at 1074; *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir.1982). "Proof to the contrary" requires language that is "clear and unambiguous" or "unmistakably clear". *Gangemi v. General Electric Co.*, 532 F.2d 861, 866 (2d Cir.1976); *International Association of Machinists and Aerospace Workers v. General Electric Co.*, 406 F.2d 1046, 1048 (2d Cir.1969).

We agree with the Union that no such unmistakably clear provision is contained in the 1977 Agreement. Paragraph 4(e) of Article XXII is ambiguous in at least two respects. First, it is not clear that the paragraph covers all employee discharge cases. Second, it is at least doubtful that the paragraph's last sentence precludes reference to an impartial arbitrator, the word "appeal" ordinarily indicating a review of proceedings already had, not a trial de novo. *See* 4 C.J.S. *Appeal and Error* § 17. Because the district court was presented with no forceful evidence of a purpose to exclude discharge grievances from arbitration, it did not err in holding that such matters were arbitrable under the 1977 Agreement. The judgment of the district court is affirmed.