Thomas P. CULLEN, Herbert J. Liem, Thomas A. Monahan, Brett Vieillard, and Geoffrey J. Winters, Plaintiffs,

v.

PAINE WEBBER GROUP, INC., d/b/a Painewebber, Inc., formerly d/b/a Paine, Webber, Jackson & Curtis, Inc., Donald E. Nickelson, Theodore M. Johnson, Steven C. Kraus, Richard Kaufman, Guy Archbold, and Robert J. Hume, III, Defendants.

No. 87 Civ. 2048 (MEL).

United States District Court,
S.D. New York.

June 23, 1988.

Chapman, Moran, Hubbard & Zimmerman, New York City, for plaintiffs; John H. Chapman, Brian E. Moran, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants; Max Gitter, Mary E. Crawley, of counsel.

LASKER, District Judge.

Thomas P. Cullen, Herbert J. Liem, Thomas A. Monahan, Brett Vieillard, and Geoffrey J. Winters, all former brokers with Paine Webber Group, Inc., charge Paine Webber Group, Inc., together with six individuals who are or were employed at Paine Webber (collectively "Paine Webber"), with having fraudulently induced them to accept employment with Paine Webber in order to capture their client bases, all allegedly in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982). The plaintiffs sue under § 1964(c), for injuries allegedly sustained by reason of violations of § 1962(a), (b), (c), and (d).

Defendants move to dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted. Defendants also contend that the claims of Monahan, Cullen, and Vieillard are barred by the doctrine of res judicata and that collateral estoppel precludes the claims of Cullen and Vieillard;[1] the claims of Liem must be stayed pending arbitration; and the claims of Winters should be stayed pending the outcome of his state court action. The defendants' motion, with the exception of the request to stay Winters' claim, is granted.

## I. BACKGROUND

The plaintiffs allege that, between July 1982 and January 1984, Paine Webber induced each of them to leave his employment to accept positions with the defendant company. Plaintiffs worked in different offices of Paine Webber, no plaintiff remaining in its employ for more than a year

---

1. That aspect of defendants' motion is for summary judgment.

and a half. The first was hired in July 1982; all five had left Paine Webber by February 1985.

Plaintiffs maintain that defendants[2] promised numerous benefits including a substantial cash bonus, special executive titles, a forty-percent commission, the right to prospect nationally, and brokerage assistants—representations that they knew to be false but made in the hope of recruiting plaintiffs, who were reportedly highly successful brokers. The scheme, which is alleged to have involved acts of mail and wire fraud, was all done for the purpose of enabling Paine Webber to obtain the plaintiffs' client bases.

During their employment, Cullen, Liem, Winters, and Monahan purchased or sold securities for their clients or for themselves based on recommendations of Paine Webber, recommendations plaintiffs allege often were not researched and were in fact made to further Paine Webber's interest. More specifically, Paine Webber is said to have "forced" Liem, Winters, and Monahan to sell certain stocks that soon thereafter plummetted in price, causing plaintiffs financial and professional injury. By charging Cullen for losses sustained by Paine Webber from securities held in an errors account, Paine Webber is also said to have "extorted" funds from Cullen. Plaintiffs contend that these acts violated federal and state securities law.[3]

Because of the defendants' failure to provide the benefits and amenities promised, the plaintiffs were unable to perform their assignments and thus, according to the plaintiffs, were constructively discharged or, in the case of Winters, fired. In addition, Paine Webber allegedly refused to furnish Cullen with a clearance enabling him to maintain contact with his accounts, thereby facilitating Paine Webber's solicitation of his clients. Moreover, it is asserted that defendants defamed the plaintiffs in an attempt to misappropriate their clients.[4] Defendants are also said to have withheld earnings of Cullen, Winters, Liem, and Monahan and to have retained some of Cullen's personal property.

After Monahan, Vieillard, and Cullen left Paine Webber, Paine Webber initiated arbitration proceedings against them, seeking to recover money allegedly due for losses charged to their errors accounts and on an agreement signed upon beginning employment. The agreement, characterized by defendants as a promissory note, provided that the signing employee would repay Paine Webber the amount advanced, which approached $300,000 for some of the plaintiffs, if, among other reasons, his employment was terminated within three years. One-third of the amount would be forgiven annually.

In each proceeding, the plaintiffs (in this action, but defendants in the arbitration) raised a variety of defenses and counterclaims, alleging among others, that they had been induced to accept employment at Paine Webber based on representations that had not been fulfilled. In the arbitration decisions announced on April 30, 1986, March 11, 1987, and June 24, 1987, respectively, Monahan's, Vieillard's and Cullen's counterclaims were dismissed and awards entered for Paine Webber. The judgment in the Monahan arbitration was confirmed on July 8, 1986 by the Supreme Court of New York.[5]

---

2. The complaint attributes relevant statements and actions to individual defendants. However, it is unnecessary to include such detail in this description of the claims.

3. Defendants argue that these allegations, even if true, fail to state a cause of action under the Securities Exchange Act. Although their argument on its face appears to have merit, it is not necessary to reach this question because of the conclusion in part II of this decision.

4. Although plaintiffs allege that the defendants used interstate phones and mail in the course of

the alleged scheme to defame the plaintiffs, as defendants point out, defamation is not a predicate act under RICO. See 18 U.S.C. § 1961(1).

5. In the arbitration decision of April 30, 1986, Paine Webber was awarded the sum demanded for Monahan's outstanding deficit account, but no award was granted for the amount allegedly due on Monahan's promissory note. Both parties agree that Monahan prevailed on his defense that the note did not fully represent the employment agreement.

## II. RICO

Because they are dispositive, only the following two of defendants' challenges to the sufficiency of plaintiffs' RICO claim are addressed: 1) that "the individual client bases and brokerage businesses" of the plaintiffs do not constitute an enterprise within the meaning of § 1961(4), and 2) that plaintiffs have not alleged a "continuing enterprise" as required by the law of this circuit.[6]

### A. Enterprise

■ The complaint alleges two enterprises.

> The racketeering activity herein complained of relates to enterprises, as defined in 18 U.S.C. § 1961(4), consisting of plaintiffs' individual client or customer bases and individual securities brokerage businesses or practices. Alternatively, it is alleged that the individual defendants and PAINE WEBBER comprise "a group of individual associations in fact comprising an enterprise" as defined in 18 U.S.C. § 1961(4).

Complaint at ¶ 19. Defendants argue that the brokers' client bases cannot constitute an "enterprise," which is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), the Court stated that an enterprise is "a group of persons associated together for the common purpose of engaging in a course of conduct." The enterprise is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a unit." *Id.* Looking to *Turkette*, courts in this circuit have held that "for an association of individuals to constitute an 'enterprise' for purposes of RICO, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1031 (S.D.N.Y.1987) (citations omitted).

It cannot be said, under the standards of *Turkette* and *Moll*, that plaintiffs' individual client bases constitute an enterprise within the meaning of § 1961(4), any more than would, for example, a stamp collection. The clients of the broker-plaintiffs did not share a common purpose or associate together; their only link was their broker.[7] *See In re Cantanella and E.F. Hutton and Co.*, 583 F.Supp. 1388, 1426 (E.D. Pa.1984) (holding plaintiff failed to plead an enterprise because "[n]o conceivable reading of the statutory definition would support a conclusion that securities accounts qualify as 'enterprises'").

### B. Continuity Requirement

■ Defendants also contend that the complaint must be dismissed because it fails to plead a "continuing" enterprise as required in this circuit to state a cause of action under RICO. Rather than "continuing," as that term has come to be understood in this circuit, the alleged enterprise had, according to the defendants, a single, short-term goal—namely, the recruitment and discharge of the plaintiffs.

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court, when considering the elements necessary to establish a pattern of racketeering, stated:

> The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effec-

---

6. Defendants also argue that plaintiffs have not alleged an injury caused by defendants' use or investment of proceeds derived from a pattern of racketeering necessary to state a cause of action under § 1962(a) and that the plaintiffs have not alleged a RICO conspiracy within the meaning of § 1962(d) because they failed to allege a substantive violation of § 1962(a), (b), or (c).

7. Because this "definition" of enterprise is insufficient, all later references to plaintiffs' enterprise in this opinion refer to the enterprise defined as Paine Webber associating in fact with the individual named defendants.

tive. It is this factor of *continuity plus relationship* which combines to produce a pattern.'

473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 91–617, p. 158 (1969) (emphasis added)).

The Second Circuit, interpreting *Sedima,* has held that "the inquiry as to relatedness and continuity is best addressed in the context of the concept of 'enterprise' expressed in section 1962(c)" and has articulated the following pleading requirements as to an enterprise:

> An enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct' and 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). This circuit requires that, under section 1962(c), the enterprise be a continuing operation and that the acts be related to the common purpose.

*United States v. Ianniello,* 808 F.2d 184, 191 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 3230, 97 L.Ed.2d 736 (1987). In *Ianniello,* the enterprise, which was alleged to have as its goal obtaining liquor licenses through false information and skimming profits, was held to satisfy the requirements of § 1962(c), despite its single purpose, because the fraud was to continue indefinitely, with no clear terminating date or goal.[8]

The court of appeals has subsequently relied on the standards set forth in *Ianniello* to dismiss RICO complaints that fail to allege an enterprise that is "sufficiently continuing." In *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 51 (2d

Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), the court affirmed the dismissal of the complaint, finding that the enterprise had "but one straightforward, short-lived goal—the sale of the [plaintiff-bondholders'] collateral at a reduced price. At the conclusion of the sale, the alleged enterprise ceased functioning."

Similarly, in *Albany Ins. Co. v. Esses,* 831 F.2d 41 (2d Cir.1987), the court affirmed dismissal of a complaint in which the only allegation was that a policyholder had filed a fraudulent claim. The court held that such an act was not sufficiently continuing to constitute a RICO enterprise.

> [T]he purpose of the enterprise alleged in Albany's amended complaint had an "obvious terminating goal or date"—inducing the insurer of its goods to pay a false insurance claim. There is nothing in Albany's amended complaint that indicates a threat of continuing criminal activity beyond this terminating goal.

*Albany,* 831 F.2d at 44.

More recently, in *Creative Bath Products, Inc. v. Connecticut General Life Ins. Co.,* 837 F.2d 561 (2d Cir.1988), the court affirmed dismissal of a complaint that charged an insurance company and its agent with violating RICO by having fraudulently induced the plaintiff-partnership to purchase life insurance policies for two of its partners. Stating that *Ianniello* and its progeny require that "the plaintiff establish the existence of an enterprise whose illicit activities or unlawful goals are continuing ones," the court found the enterprise was not sufficiently continuing because the defendants' misrepresentations had been made "in pursuit of a single short-lived goal." *Creative Bath,* 837 F.2d at 564.

---

**8.** Although both the language of *Sedima* and *Ianniello,* out of which the Second Circuit law requiring a continuing enterprise has evolved, addressed the requirements of § 1962(c), the requirement that the enterprise be continuing to sustain a RICO cause of action is not limited to actions arising pursuant to § 1962(c). *Albany Insurance Co. v. Esses,* 831 F.2d 41, 44 (2d Cir. 1987) (dismissing RICO claim brought pursuant to § 1962(b), (c), and (d) because enterprise was "not sufficiently 'continuing' to constitute a

RICO 'enterprise' under 18 U.S.C. §§ 1961(4), 1962"); *Nassau–Suffolk Ice Cream v. Integrated Resources, Inc.,* 662 F.Supp. 1499, 1506–07 (S.D. N.Y.1987) (dismissing RICO claims arising under § 1962(b) and (c) because enterprise not sufficiently continuing). Moreover, neither the language of the statute nor the analysis of the Second Circuit cases indicate that the term "enterprise" is to be construed differently in the various subsections of § 1962.

Finally, in *Beauford v. Helmsley*, 843 F.2d 103 (2d Cir.1988), the court of appeals affirmed the dismissal of a RICO complaint that alleged fraud on the part of the defendants in an offering plan for the conversion of apartments to. condominiums, despite the finding that the alleged enterprise "is indeed ongoing and still in the process of selling or seeking to sell [a finite number of] condominiums pursuant to its allegedly fraudulent offering plan." *Id.* at 110. Following a review of *Albany, Beck*, and *Creative Bath*, the court so held, stating:

> [W]e must decide whether a discrete, even if widespread, and a continuing even if finite, scheme is sufficient to permit a plaintiff to take advantage of RICO. We hold that it is not.

*Id.*[9]

■ In the case at hand, plaintiffs allege that in 1982 the defendants embarked on a scheme to recruit them in an effort to capture their client bases. The first plaintiff began working with Paine Webber in July 1982. By February 1985, all five plaintiffs had left Paine Webber. The alleged goal of the enterprise in this case, like that of the enterprises in *Beck, Albany, Creative Bath*, and *Helmsley*, had a clear terminating goal. Once the brokers left Paine Webber, the goal was effectively accomplished. As in *Albany*, the scheme required a number of steps before the goal was achieved, but, upon its accomplishment, there was no suggestion that the criminal activity would continue.[10] *Albany*, 831 F.2d at 45.

Nor is the enterprise alleged in the case at hand "ongoing" or "continuing" simply because the acts alleged spanned a period of years. The enterprise plaintiffs allege is of a more limited duration than that of *Helmsley*. In *Helmsley*, the offering plan complained of for one set of apartments was approved in 1973; the plan for the

remaining three sets of apartments gained approval in 1984; and the defendants continue to engage in sales and sales efforts pursuant to the allegedly fraudulent plan. *Beauford v. Helmsley*, 650 F.Supp. 548, 549 (S.D.N.Y.1986), *aff'd*, 843 F.2d 103 (2d Cir.1988). *See also Procter & Gamble Co. v. Big Apple Industrial Bldgs, Inc.*, 655 F.Supp. 1179, 1184 (S.D.N.Y.1987) (dismissing RICO complaint on a finding that the alleged scheme, which was said to cover a number of years, failed to satisfy the requirement of continuity where the defendants were engaged in a single lawful project of finite duration). Accordingly, the complaint, in its entirety, must be dismissed.

■ Finally, defendants argue extensively that the complaint must be dismissed because it does not allege a "person" distinct from the "enterprise." Although it is not necessary to reach this argument, the complaint having been found insufficient on other grounds, I note that, although the complaint does name those who associated to form the enterprise as "persons," defendants may be designated both as "persons" within the meaning of the RICO statute, 18 U.S.C. § 1961(3), *and* one of the entities composing the enterprise. *See Cullen v. Margiotta*, 811 F.2d 698, 729–30 (2d Cir.1987), *cert. denied*, —— U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 448 (E.D.N.Y.1987); *In re Energy Systems Equipment Leasing Sec. Litigation*, 642 F.Supp. 718, 740 (E.D.N.Y.1986); *Fustok v. ContiCommodity Services, Inc.*, 618 F.Supp. 1074, 1076 (S.D.N.Y.1985). I need not reach the question whether a corporation and its employees, not acting with others, can be both "persons" and the "enterprise."

9. *Helmsley* is one of two RICO cases scheduled to be heard en banc upon the initiative of the court, in order to clarify the Second Circuit law addressing the "pattern" and "enterprise" requirements of RICO.

10. I do not find persuasive plaintiffs' argument that the continuing effect of the fraud, a factor emphasized when evaluating sufficiency of the

enterprise in *In Re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 517 (S.D.N.Y. 1987), renders the enterprise ongoing. *Beck, Albany, Creative Bath*, and *Helmsley*, all speak of the terminal quality of the goal or purpose of the *enterprise*, not of its effects, as the critical factor when determining whether an enterprise is "continuing."

## III.  PRECLUSION

Defendants also argue that Monahan, Vieillard, and Cullen's claims are barred by the principle of res judicata, and that collateral estoppel bars the claims of Cullen and Vieillard.[11]  According to the defendants, because Monahan, Vieillard, and Cullen raised many, if not all, of the allegations that form the basis of this complaint as defenses and counterclaims in arbitration proceedings initiated by Paine Webber, these three plaintiffs cannot now relitigate those claims.  Plaintiffs respond that the claims ought not be precluded because the RICO causes of action were not and could not have been arbitrated, the arbitration decision was vague, and Cullen and Vieillard did not have a full and fair opportunity to litigate their claims in the arbitration.

The issue thus presented raises two questions.  First, should the arbitration proceedings be given preclusive effect in this later court proceeding involving RICO?  Second, are the elements of res judicata— an identity of parties, an identity of the cause of action, a full and fair opportunity to litigate the claim below, and a dispute within the scope of arbitration—satisfied?

### A.  Res Judicata Effect Of Arbitration

█ Under the doctrine of res judicata, or claim preclusion as it is sometimes described, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. MCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (citation omitted).  Res judicata applies to claims for or defenses to recovery that were available at the time of the earlier litigation, even if they were not raised or determined in that proceeding.  *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

Although some arbitration proceedings have been given preclusive effect, the Supreme Court has, as plaintiffs emphasize, been unwilling to hold that arbitration proceedings are always entitled to res judicata

or collateral estoppel effect.  In *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), and *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Court cautioned that, in fashioning preclusion rules for arbitration proceedings, the nature of the federal rights involved and the protection afforded them in an arbitration must be considered.

In *McDonald*, the Court concluded that awarding preclusive effect to an arbitration proceeding in a later § 1983 case would undermine the statute's goal of protecting federal rights.  However, despite language in the opinion emphasizing the inadequacy in certain types of cases of arbitration as a substitute for judicial proceedings—such as its more limited factfinding, and the possible inexperience and limited authority of the arbitrator—*McDonald* was premised on an analysis of the adequacy of arbitration to protect the specific constitutional and statutory rights of § 1983.  Its holding, although not its analysis, has been construed as limited to § 1983 cases.  *See Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 308 n. 21, 106 S.Ct. 1066, 1077 n. 21, 89 L.Ed.2d 232 (1986) (citing *McDonald* for the limited proposition that the "arbitrator's decision would not receive preclusive effect in any subsequent § 1983 action"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. at 222, 105 S.Ct. at 1243 (stating that *McDonald* held that "neither the full-faith-and-credit provision of 28 U.S.C. § 1738, nor a judicially fashioned rule of preclusion, permits a federal court to accord res judicata or collateral estoppel effect to an unappealed arbitration award *in a case brought under 42 U.S.C. § 1983* ") (emphasis added); *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir.1985) (interpreting *Byrd* and *McDonald* to require a case-by-case approach when determining whether arbitration of a federal claim should be given preclusive effect).

---

**11.**  Because res judicata bars these claims, it is not necessary to decide whether collateral estop-

pel also precludes Cullen and Vieillard's claims.

Because it involves RICO, the present case is distinguishable from *McDonald.* Plaintiffs have not persuasively argued that giving the arbitration preclusive effect as to the acts underlying the RICO claim will undermine the purposes of RICO or the rights it is designed to protect, particularly in view of the Supreme Court's recent holding that RICO claims may be arbitrated. *See Shearson/American Express Inc. v. McMahon,* — U.S. —, 107 S.Ct. 2332, 2343–46, 96 L.Ed.2d 185 (1987). Additionally, the plaintiffs' defenses and counterclaims in arbitration alleged misconduct on the part of Paine Webber and its employees in their hiring, employment, and discharge —matters well within the scope of arbitration and the expertise of the arbitrators. As stated in *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d at 1361, it is not "improper to grant collateral estoppel effect to an arbitration panel's factual findings regarding these underlying acts [for a RICO claim], particularly if such findings are within the panel's authority and expertise."

Accordingly, I conclude, as have the majority of courts that have considered the question, that the decision of the arbitration panels addressing the predicate acts underlying the RICO claims of Cullen, Vieillard, and Monahan may be given preclusive effect in the case at hand, providing the elements necessary for preclusion are satisfied. *See City of Gainesville v. Island Creek Coal Sales Co.,* 618 F.Supp. 513, 518 (N.D.Fla.1984) (holding that even if RICO claims were nonarbitrable, arbitration of factual matters underlying such claims precludes later litigation; claims may not be relitigated under new labels), *aff'd,* 771 F.2d 1495 (11th Cir.1985); *Sports Factory, Inc. v. Chanoff,* 586 F.Supp. 342, 347–48 (E.D.Pa.1984) (arbitration given res judicata effect even though later suit raised RICO claim because core facts were identical and both proceedings arose from the same transaction); *see also Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926, 929–32 (7th Cir.1986) (holding that res judicata barred plaintiffs' fraud and RICO claims, even though not raised as defense in earlier arbitration, because

claim would, if proven, nullify rights established earlier), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1351, 94 L.Ed.2d 521 (1987); *but see Wing v. J.C. Bradford & Co.,* 678 F.Supp. 622, 629 (N.D.Miss.1987) (arbitration not given preclusive effect in subsequent RICO suit where court had in earlier ruling held RICO claim nonarbitrable).

This decision is not inconsistent with *Cullen v. Margiotta,* 811 F.2d 698, 732 (2d Cir.1987), *cert. denied,* — U.S. —, 107 S.Ct 3266, 97 L.Ed.2d 764, (1987), and *Nordberg v. Lord, Day & Lord,* 107 F.R.D. 692, 701 (S.D.N.Y.1985), in which state court decisions were not given preclusive effect in subsequent RICO suits. In both cases, the courts held that, because federal courts have exclusive jurisdiction of RICO claims, the actions could not have been brought in state courts and thus were not entitled to res judicata effect pursuant to 28 U.S.C. § 1738, which provides:

> ... *judicial proceedings* of any Court of any such State ... shall have the same full faith and credit in every court within the United States and its territories ... as they have by law or usage in the courts of such State ... from which they are taken.

(Emphasis added). Because § 1738 by its terms does not apply to arbitration proceedings, *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 477, 102 S.Ct. 1883, 1895, 72 L.Ed.2d 262 (1982), the analysis of *McDonald,* and not of *Margiotta,* applies in this instance.

Plaintiffs' reliance on *O'Neill v. Merrill Lynch, Pierce, Fenner & Smith,* 654 F.Supp. 347 (N.D.Ill.1987), in which an earlier arbitration was not given preclusive effect in a later action alleging securities and RICO violation, is similarly misplaced. The *O'Neill* court did not hold, as plaintiffs suggest, that an earlier arbitration could not bar a later RICO claim. Rather, the arbitration was denied preclusive effect because it was unclear what standard of proof had been applied, and therefore whether a more stringent standard—appropriate for the common law fraud claim— than is required had been applied to the federal securities claim.

## B. Elements of Res Judicata

█ Having concluded that the arbitration proceedings are eligible to be given res judicata or collateral estoppel effect, it is necessary to consider whether the elements of res judicata were satisfied in the earlier arbitrations between the present parties:[12] that is whether the earlier proceeding involved an identity of parties, *Nevada v. United States*, 463 U.S. 110, 130, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983), an identity of cause of action, *id.*, and a full and fair opportunity to litigate the matter, *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979).

### 1. Privity

█ In the arbitration proceedings, Paine Webber and the individual plaintiffs here—Monahan, Vieillard, and Cullen-were parties. The individual defendants in this action, officers of Paine Webber involved in the alleged schemes, were not parties. However, because there is privity between Paine Webber and its officers, the requirement that there be an identity of parties is satisfied. *See Headley v. Bacon*, 828 F.2d 1272, 1278 (8th Cir.1987) (citing Restatement for proposition that judgment against injured party in one action generally bars subsequent action against those in vicarious liability relationship with defendant in first action); *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir.1983) (holding that government and its officers are in privity for purposes of res judicata and dismissing a suit against a village and its officials alleging the same cause of action as asserted in a previous case against village), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). *Cf. Cahill v. Arthur Andersen & Co.*, 659 F.Supp. 1115, 1123, (S.D.N.Y.1986) (finding that there was sufficient identity of parties between accounting firm and officers of a company it audited to bar plaintiff's action against accounting firm where first action against the company's officers had been dismissed with prejudice; plaintiff knew at the time of the original action of accounting firm's alleged role in the conspiracy), *aff'd*, 822 F.2d 14 (1987).

### 2. Cause of Action

█ The requirement of "identity of cause of action" does not mean that the claims alleged be identical, but only that the claims in the later action must arise from the same transaction. Restatement (Second) of Judgments § 24 (1982). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983) (citations omitted). *See also Group Health Inc. v. U.S.*, 662 F.Supp. 753, 764 (S.D.N.Y. 1987).

Many of the claims raised in the plaintiffs' complaint concerning Monahan were raised in his arbitration, either as a defense or counterclaim.[13] In both the arbitration and this action, Monahan alleged and alleges that Paine Webber deceived and defrauded him by inducing him to leave his previous employment with promises of particular benefits and that Paine Webber's failure to live up to these representations made it impossible for Monahan to perform his work and caused him to lose clients. However, the arbitration did not include Monahan's present allegations that Paine Webber instructed him to sell certain stock,

---

**12.** Because the basis for this court's jurisdiction is a federal question, rather than diversity, the federal courts' rule of res judicata governs. *Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971).

**13.** The listing of similarities between the two proceedings for these three plaintiffs is not meant to be all inclusive. It only illustrates the common allegations. For a detailed comparison, see Reply Affidavit of Max Gitter in Support of Defendants' Motion to Dismiss and/or for Summary Judgment ("Gitter Reply Affidavit") (October 26, 1987), Exhibit C, Comparison of Factual Allegations of Arbitration Pleadings of Cullen and Vieillard with Relevant Factual Allegations of Complaint.

which Paine Webber was allegedly shorting, and that Paine Webber caused a cease and desist order to be issued restraining Monahan from doing any business in Ohio.[14]

A comparison of Vieillard's counterclaims in arbitration with his claims here reveals striking similarities. In both cases, Vieillard details his recruitment, Paine Webber's misrepresentations about the benefits of its employment, and its scheme to discharge and defraud him. Both papers allege, in similar detail, that Paine Webber's failure to provide the promised benefits led to Vieillard's constructive discharge.

A similar comparison as to Cullen's charges establishes that, with one exception, all the claims brought in this proceeding were raised in the arbitration. The counterclaim, like the complaint, alleges that Paine Webber induced Cullen to leave his previous employment with promises, upon which Cullen relied, of a bonus, stable management, and research of securities, among others. In both cases, it is alleged that Paine Webber failed to fulfill those promises, that Paine Webber defamed Cullen and retained his client base, and that Paine Webber improperly charged Cullen with losses from its errors account. Only the allegations of security law violations are not developed as fully in the arbitration papers as in the present case.

Although the defenses and counterclaims of Monahan, Vieillard, and Cullen in the arbitration proceedings were not framed as a RICO action, nor were the allegations characterized as acts of mail, wire, and securities fraud as is true in this complaint, it is fair to conclude that there was, nevertheless, an identity of issues as that phrase is used in res judicata decisions. In both cases the claims alleged and the allegations all arose from the same transaction, that is, Paine Webber's hiring and discharge of the plaintiffs. Even though in the arbitration plaintiffs did not raise all the claims presented in this case, res judicata is never-

theless applicable because the plaintiffs could have raised in the arbitration proceedings every claim underlying their RICO cause of action. *See In re Teltronics Services, Inc.*, 762 F.2d 185, 193 (2d Cir.1985) (holding later case barred by res judicata, because "the events constituting the asserted injury are the same in this case as in its predecessors; all the facts necessary to support the claims before us now were pleaded, or could have been pleaded, in the first action....").

Moreover, res judicata bars the claims of Cullen, Monahan, and Vieillard even though the present complaint alleges, as plaintiffs argue, a broader scheme to defraud, because "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." *Id.* (citations omitted).

### 3. Full and Fair Opportunity

■ Cullen and Vieillard argue that they were not afforded a full and fair opportunity to litigate their claims in the arbitration proceedings. Cullen's affidavit states:

> I was unfairly denied the use of discovery of critical information and documents which was ordered produced by the NYSE. Paine Webber appeared at the arbitration hearing and the three-person panel of arbitrators made us proceed without Paine Webber's records, which were required to be kept by Rules of the SEC and the NYSE. My expert witness testified at the hearing that such records were necessary for me to defend against Paine Webber's claims.

Cullen Affidavit at ¶ 11 (October 8, 1987) (Exhibit B, Plaintiffs' Opposition to "Defendants' Motion to Dismiss and/or for Summary Judgment") ("Plaintiffs' Opposition"). In his affidavit, Vieillard raises a virtually identical challenge to the fairness of his arbitration proceeding.

> I was unfairly denied the use of discovery of critical information and documents. Specifically, I made a discovery

---

**14.** In March 1988, Monahan filed a separate case in this court elaborating on Paine Webber's failure to license him in a timely fashion, there-

by causing the State of Ohio to issue the cease and desist order.

request for a specific internal audit report of Paine Webber, specific Paine Webber internal operations reports, and the personnel file of Guy Archbold, one of the defendants in the litigation. Such materials were critical to my case. Paine Webber flatly refused to provide me with such materials. The arbitrators, for no reason, did not require the production of such materials. All three arbitrators were current or former managerial employees at major brokerage firms in the Seattle area.

Vieillard Affidavit at ¶ 11 (October 7, 1987) (Exhibit E, Plaintiffs' Opposition). Cullen and Vieillard do not dispute that, at the arbitration proceedings, they were represented by counsel who presented evidence and cross-examined witnesses.

Although the party asserting res judicata as an affirmative defense has the burden of establishing an identity of parties and causes of action, the party opposing the defense has the burden of establishing the absence of a full and fair opportunity to litigate the claim previously. *Cf. Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971) (stating that party against whom estoppel is asserted must be permitted to demonstrate that he did not have a fair opportunity the first time to litigate his claims); *Yachts America, Inc. v. United States,* 673 F.2d 356, 360 (Ct.Claims) (interpreting *Blonder* to place on party against whom estoppel is asserted burden to show she lacked adequate opportunity to litigate the claim in the initial proceeding), *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982).

Cullen and Vieillard have not satisfied this burden. A review of the transcript of Cullen's arbitration reveals that, during the two days of the hearing, Cullen was able to present not only his allegations of promises of benefits he would enjoy at Paine Webber that were unfulfilled, but also to elicit similar testimony from Monahan and Winters

about their recruitment to and constructive discharge from Paine Webber. Cullen also testified that he had been told "not to worry" about the promissory note and that he had not agreed to accept responsibility for amounts charged to him as errors.

Moreover, there was an extended discussion of Paine Webber's alleged failure to produce the documents and the propriety of proceeding with the hearing. Based on Paine Webber's assertions that it had produced everything relevant to Cullen's request it could find, the arbitrators allowed the proceeding to go forward, commenting to Cullen's attorney that "[a]s we get along in the case you can argue what you want. You can get into evidence some way...."[15] Finally, Cullen's expert Anthony John Negus testified that the documentation produced by Paine Webber was insufficient to show that Cullen was responsible for certain transactions placed in the errors account or to negate Paine Webber's allegations. He did not, however, broadly state the documents were "necessary for [Cullen] to defend against Paine Webber's claims," as Cullen contends.

Unlike Cullen, Vieillard does not state that Paine Webber was ordered by the NYSE to produce the documents he requested. The arbitrators' failure to order production of the document appears to be within their discretion; 9 U.S.C. § 7 (1982) provides that arbitrators *may* require that specified documents be provided.

Moreover, by agreeing to arbitrate claims arising from employment, the parties effectively consented to the limited discovery available in arbitration.

[F]ull scale discovery is not automatically available in arbitration, as it is in litigation. Everyone knows that is so; thus the unavailability of the full panoply of discovery devices, with their attendant burdens of time and expense, may fairly be regarded as one of the bargained-for benefits (or burdens, depending on one's subsequent point of view) of arbitration.

---

15. Transcript of Hearing at 40, In the Matter of Arbitration Between Paine, Webber, Jackson &

Curtis, Inc. v. Cullen, June 23–24, 1987.

*Commonwealth Insurance Company v. Beneficial Corporation,* No. 87–5056 (S.D. N.Y. September 22, 1987) (CSH) [available on WESTLAW, 1987 WL 17951]. Cullen and Vieillard's argument that they were denied a full and fair opportunity to litigate their defenses and counterclaims is also somewhat undercut by their failure to move for an order vacating the award in accordance with 9 U.S.C. § 10 (1982).

Finally, Vieillard's assertion that the proceedings were not fair because the arbitration panelists belonged to the industry—inferring that they might favor Paine Webber—is unpersuasive The Code of the National Association of Securities Dealers, which applied to Vieillard's arbitration, specifies that the panel shall be comprised of industry members. Section 9 states:

> Except as otherwise provided in Section 10 of the Code, in all arbitration matters between or among members and/or persons associated with members, a panel shall consist of no fewer than three nor more than five arbitrators, all of whom shall be from the securities industry.[16]

Such panels consisting of those drawn from the industry are not uncommon, since experience provides the panelists with necessary expertise. "[P]arties agree to arbitrate precisely because they prefer a tribunal with expertise regarding the particular subject matter of their dispute. Familiarity with a discipline often comes at the expense of complete impartiality." *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.2d 79, 83, 84 (2d Cir.1984) (citations omitted) (also emphasizing that "the small size and population of an industry might require a relaxation of judicial scrutiny...."). By agreeing to arbitrate any claims arising from his employment, Vieillard consented to a panel of this composition. Vieillard has also failed to establish, as is his burden, that " 'a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.' " *Colavito v. Hockmeyer Equip-*

*ment Corp.,* 605 F.Supp. 1482, 1488 (S.D.N. Y.1985) (quoting *Morelite Construction Corp. v. New York City District Council Carpenters Benefits Funds, et al.,* 748 F.2d 79, 84 (2d Cir.1984)).

### 4. Scope of Arbitration

■ Finally, I conclude that the claims were properly within the scope of arbitration. Although, as plaintiffs argue, a RICO claim was not arbitrable at the time of the Cullen, Vieillard, and Monahan's proceedings, the claims underlying the predicate acts were subject to arbitration.

There is a strong federal policy favoring arbitration. *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 254–55, 97 S.Ct. 1067, 1073–74, 51 L.Ed.2d 300 (1977); *International Union of Elevator Constructors v. National Elevator Industry, Inc.,* 772 F.2d 10, 13, (2d Cir.1985). Where the arbitration clause is broad, "any claim that falls within its scope will be considered arbitrable absent compelling proof to the contrary." *International Union,* 772 F.2d at 13 (citing *Nolde,* 430 U.S. at 255, 97 S.Ct. at 1074). " 'Proof to the contrary' requires language that is 'clear and unambiguous' or 'unmistakenly clear'." *Id.* (citations omitted).

In this case, Cullen, Monahan, and Vieillard each signed a Uniform Application for Securities Industries Registration that states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register.[17]

Rule 347 of the New York Stock Exchange ("NYSE"), of which Paine Webber is a member and with whom the three plaintiffs were registered, provides for arbitration of any dispute arising out of the employment of a registered representative with a mem-

---

**16.** Gitter Reply Affidavit, Exhibit B.

**17.** Affidavit of Max Gitter in Support of Defendants' Motion to Dismiss or for Summary Judg-

ment ("Gitter Affidavit") (July 23, 1987), Exhibits A–1, A–3, A–4.

ber organization.[18] Similarly, Article XI of the NYSE Constitution provides for the arbitration of controversies between a member and any other person "arising out of the business of such member...."[19] The constitution and the rules of the stock exchange create a binding agreement between employees and the member organization. *See Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.) (holding that NYSE rules and constitution create an agreement to arbitrate binding on both parties), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 587 F.Supp. 1520, 1523 (N.D.Ga.1984) (holding that Uniform Application creates binding agreement, not merely between signing party and NYSE, but also between signing party and member organization).

Not only did the Uniform Application create a binding agreement between Cullen, Vieillard, and Monahan and Paine Webber to arbitrate disputes, the disputes at issue arose out of the employment with or business of Paine Webber and were within the scope of the employment agreement. But for the employment of these three plaintiffs with Paine Webber, the disputes would not have arisen.[20] *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 587 F.Supp. at 1524 (holding that disputes over promissory notes and tortious acts—the very same acts complained of in this case—were "inextricably intertwined" with employment and thus subject to arbitration).

### C. Clarity of Decision

Finally, the conclusory nature of the arbitrators' decisions—simply stating that the counterclaims are dismissed—does not preclude the decisions from having res judicata effect. *See Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1206 (1st Cir.1987) (arbitrator's fail-

ure to make detailed factual findings did not prevent decision from barring new suit); *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir.1985) (despite lack of specific factual findings, it was clear that decision on merits of acts that underlay RICO claim was necessary to decide award); *Dalow Industries, Inc. v. Jordache Enterprises, Inc.*, 631 F.Supp. 774 (S.D.N.Y.1985) (statement that all claims were denied gives rise to heavy presumption that all claims submitted to arbitration were addressed).

This case is distinguishable from *Wing v. J.C. Bradford & Co.*, 678 F.Supp. 622 (N.D. Miss.1987), upon which the plaintiffs rely. In *Wing*, the court refused to grant collateral estoppel effect to an arbitration decision awarding the plaintiffs damages and thereby bar the pending federal securities claims. Defendants contended that plaintiffs' arbitration award was based at least in part on plaintiffs' Mississippi securities law and common law fraud counts, which raised the same issues as the federal claims, and that the award had fully compensated the plaintiffs for their injuries. The argument was rejected in part because it was unclear from the arbitration decision whether the plaintiffs had prevailed on the securities and fraud claims, because other state claims had been submitted to the arbitrators. *Id.* at 628. In the arbitrations at hand, however, the counterclaims were dismissed in their entirety. Therefore, there is no ambiguity similar to that in *Wing* in this case.

### D. Res Judicata Conclusion

Having compared the defenses and/or counterclaims of Monahan, Vieillard, and Cullen in their arbitration proceedings with the claims concerning them in this complaint, I conclude that the doctrine of res judicata bars their claims. The disputes in

---

**18.** Gitter Affidavit, Exhibit B.

**19.** Gitter Affidavit, Exhibit C.

**20.** I do not agree with plaintiffs that *Washburn v. Societe Commerciale De Reassurance*, 831 F.2d 149 (7th Cir.1987), in which the court held that the claims were not within the scope of the arbitration agreement compels a contrary conclusion. In that case, the court found that the

issues before it did not involve an interpretation of the reinsurance agreement, which would have been subject to arbitration, but revolved on the role of the agreement in a broader scheme. In this case, although a scheme involving multiple parties is alleged, the disputed transactions all arose in the context of the plaintiff-brokers employment with Paine Webber.

both situations—the arbitrations and this action —arose between these plaintiffs and Paine Webber; the individual officers of Paine Webber, now named as defendants, are in privity with Paine Webber. Although the claims in the arbitrations and this case are not identical, they arise from the same transaction and a finding in this action for the plaintiffs would undermine the arbitration awards. Finally, Cullen and Vieillard have not established that they did not have a full and fair opportunity to present their claims in arbitration, and the claims of all three plaintiffs were within the scope of arbitration.

## IV. STAY OF LIEM'S CLAIMS

■ Paine Webber argues, and I agree, that the claims regarding Liem should be stayed pending resolution of the arbitration proceeding initiated by Paine Webber. Liem's response to this argument is virtually identical to that of Cullen in still another action. In that case, Paine Webber moved for and was granted a stay of a federal suit initiated by Cullen pending arbitration. *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 587 F.Supp. 1520 (N.D.Ga.1984). The court, reviewing the same Uniform Application for Securities Industry Registration form as was signed by Liem, rejected Cullen's argument that the form did not reflect an agreement to submit disputes to arbitration and that, even if it were such an agreement, Paine Webber was not a beneficiary. The court held that the agreement, providing that "any controversy between a registered representative and any member ... arising out of the employment ... of such registered representative by and with such member organization shall be settled by arbitration ..." covered allegations of defendant's tortious misconduct, because the acts were "inextricably intertwined" with plaintiff's employment. *Id.* at 1524. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration" given the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Accordingly, Liem's claims in this action are stayed pendng arbitration.

## V. STAY OF WINTERS' CLAIMS

■ Defendants argue that Winters' claim should be stayed, pending the outcome of an action he filed in New York supreme court on October 12, 1984, asserting many of the underlying predicate acts in this case, and an action in Connecticut state court, initiated by Paine Webber on September 25, 1984, in which Winters raises counterclaims similar to the claims asserted in the New York state action. Plaintiffs contend that a stay is inappropriate, emphasizing that not only has Winters not alleged a RICO claim in either state action, but also that he could not allege such a claim in New York state court. *See Greenview Trading Co., Inc. v. Hershman & Leicher*, 108 A.D.2d 468, 489 N.Y.S.2d 502 (1st Dept.1985) (state courts lack concurrent jurisdiction over RICO claims).

Because this case does not clearly fall within the three categories in which abstention is clearly warranted,[21] it can be stayed only if it falls within the "exceptional circumstances test" of *Colorado River Water Conservation District v. United State*, 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14–16, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983). The factors to consider include: 1) the assumption by either court over any res or property involved in the action; 2) the inconvenience of the forum, 3) the avoidance of piecemeal litigation, and 4) the order in which the courts obtained jurisdiction. *Colorado*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47.

**21.** Abstention is warranted to: 1) avoid a federal constitutional issue by seeking a state determination of state law, 2) defer to state resolution of difficult state law questions that involve important public policy or where federal review would disrupt state regulation or administra-

tion, 3) decline to restrain state criminal proceedings, collection of state taxes and the like. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976).

See also *Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust, Co.*, 806 F.2d 411 (2d Cir.1986). Additionally, the court should consider, when evaluating whether a stay is appropriate, whether federal or state law provides the rule of decision on the merits and whether the other court can adequately protect the party's rights. *Moses*, 460 U.S. at 23–26, 103 S.Ct. at 941–42. Stays are not readily granted; "only the clearest of justifications will warrant dismissal." *Moses* at 16, 103 S.Ct. at 937. The burden of persuasion rests on the party opposing jurisdiction. *Arkwright–Boston Mfrs. Mutual Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir.1985).

In this case, the first factor is not relevant, as there is no res or property at issue. The inconvenience of the forum provides no guidance, as the New York state courthouse in which Winters initiated a similar action is adjacent to this courthouse. The third factor, however, weighs in favor of a stay. Because the claims in the state action are so similar to those involving Winters in this case, adjudication of the same factual incidents may yield inconsistent results. Failure to abstain will force the parties to litigate in two different proceedings, ultimately creating questions of claim and issue preclusion. *See Awkwright–Boston*, 762 F.2d at 211. Fourth, the state action was filed first and, according to Paine Webber, substantial discovery has been completed in the state action. *Moses*, 460 U.S. at 21, 103 S.Ct. at 939 (court should consider filing date as well as progress made in two actions). *But see Lumbermens Mutual*, 806 F.2d at 415 (deemphasizing extent of discovery completed as a factor, as discovery would be useful in either action). Finally, federal law governs the RICO claim before this court, a factor militating against a stay. This court is the only one of the three in which Winters' is currently litigating that clearly has jurisdiction over RICO claims. The New York courts have held that they do not have concurrent jurisdiction over RICO and Connecticut courts have yet to address the issue. *See Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 560, 103 S.Ct. 3201, 3210, 77 L.Ed.2d 837 (1983)

(stay or dismissal of federal suit improper if there was no jurisdiction in concurrent state actions to adjudicate the claim).

Although a stay in this case would prevent simultaneous litigation involving the same parties, it would not necessarily prevent piecemeal litigation. Were Winters to prevail in state court, he presumably would still be entitled to seek recovery on his RICO claim, arguing issue preclusion because the predicate acts would have been established. *See Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926, 931 (7th Cir.1986) (stating that if plaintiffs had raised their fraud defense in arbitration and prevailed, they "would arguably be free to bring their RICO claim in the district court"). Because the New York state court lacks the broad jurisdiction to enable it to dispose of the entire matter, it would not be in the interest of "conservation of judicial resources and comprehensive disposition of litigation" to stay the federal action. *Colorado*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

> Indeed, abstention would run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims. The grant of such jurisdiction could be seriously hampered if federal courts exercised discretionary power to await the outcome of related state court proceedings.

*Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2d Cir.1986) (holding stay inappropriate if federal suit alleges claims within exclusive jurisdiction of federal courts).

Accordingly, the stay is denied. This decision is consistent with federal courts "unflagging obligation . . . to exercise the jurisdiction given them," the pendency of a state court action being no bar to the exercise of federal jurisdiction. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

## VI. SUMMARY

In sum, the RICO claim, the sole claim in the complaint, is dismissed for failure to

state a cause of action. In the alternative, the claims of Cullen, Monahan, and Vieillard are barred by the doctrine of res judicata and the claim of Liem is stayed pending arbitration. However, the Winters' claim is not stayed, because the state court action may not ultimately dispose of his claim.

It is so ordered.